**NORTHSIDE TENANTS' RIGHTS CO-ALITION et al., Plaintiffs,**

**v.**

**John A. VOLPE et al., Defendants.**

**Civ. A. No. 72-C-300.**

United States District Court,
E. D. Wisconsin.

July 20, 1972.

Brian A. Jeffrey, Freedom Through Equality, Inc., Milwaukee, Wis., for plaintiffs.

David J. Cannon, U. S. Atty., Milwaukee, Wis., for defendant John A. Volpe, Frank C. Turner, and Robert H. Paddock.

Robert W. Warren, Atty. Gen. by Richard E. Barrett and E. Gordon Young, Asst. Attys. Gen., Madison, Wis., for defendant William R. Redmond.

James Boniface, Asst. Corp. Counsel, Milwaukee, Wis., for defendants George J. Pazik and Robert W. Brannan.

---

## DECISION AND ORDER

REYNOLDS, Chief Judge.

Plaintiffs challenge the construction of an urban freeway in their Milwaukee neighborhood on the ground that the federal, state, and county defendants have failed to comply with the National Environmental Policy Act of 1969 ("NEPA") (Title 42 U.S.C. § 4321 et seq.), the State of Wisconsin's Environmental Policy Act of 1971 (§ 1.11(2), Wis.Stats.; Ch. 274 Laws of 1971), and the 1968 Federal Highway Act (Title 23 U.S.C. § 128(a)). Jurisdiction of this court is alleged under Title 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 1361 (mandamus).

Shortly after commencement of this suit a hearing on plaintiffs' motion for a temporary restraining order and preliminary injunction was held in which all parties participated. At the conclusion of the hearing I granted plaintiffs' motion for a temporary restraining order, halting all further construction. I withheld ruling on the motion for a preliminary injunction at that time in order to allow all parties to submit briefs, affidavits, and statements of fact. These papers having now been submitted, and on the basis of that record, I now find that plaintiffs' motion for a preliminary injunction should be granted.

For the purpose of the motion for a preliminary injunction now before me, and for this purpose only, I find the facts to be as follows.

Park Freeway-West is an urban freeway being financed by Wisconsin and the federal government on a 50-50 basis. Using the nomenclature of the Department of Transportation, it is a primary highway. Park Freeway-West was first broached in 1955 when the Milwaukee Board of Supervisors approved a master plan for the entire Milwaukee County expressway system. The entire expressway system involves some sixty miles of highway, thirty-nine miles of which are now complete. Park Freeway-West, a part of the overall expressway scheme, involves approximately four miles of highway. Its location was finalized by county and state officials in 1962, and in 1963 federal location approval was granted. Site clearance contracts were first let in 1964, and in 1966 federal authorization for right-of-way acquisition was granted. Preliminary design plans were then prepared, and in 1968 design approval was granted by the federal government. With the exception of approval of plans, specifications, and estimates ("P.S. & E.") for (1) a storm sewer located in the eastern portion of the project (approved 1970) and (2) for certain bridge and overpass contracts (approved this year), no other federal approval or authorizations have been granted. This is to say that federal approval and authorization for the vast bulk of the specific construction projects involved in Park Freeway-West have not yet been granted.

As of June 1972, approximately 99 per cent of the proposed right-of-way had been acquired and cleared. However, except for a sewer in the eastern part of the project, no actual construction has begun, nor are any construction contracts presently outstanding. The total cost of the Park Freeway-West project is estimated at sixty-one million dollars. Of this amount twenty million dollars has already been spent and an additional twenty-three million dollars is expected to be contracted out this year. Of the twenty million dollars already spent, about 60 per cent was spent to purchase right-of-way and roughly 5 per cent for site clearance. State and county officials have to some extent already investigated the expected environmental effects of the freeway.

A preliminary injunction cannot issue unless it appears that the plaintiffs will ultimately prove successful in their suit. I find that this probability of success exists. While plaintiffs allege three avenues of attack, for purposes of this motion I shall deal only with plaintiffs' contentions involving NEPA. No suggestion as to the merits of plaintiffs' other grounds of attack is meant to be implied by my silence as to them in this opinion.

NEPA, which became effective January 1, 1970, reads in pertinent part as follows:

"§ 4331. * * *

"(a) The Congress, recognizing the profound impact of man's activity on the interrelations of all components of the natural environment * * * and recognizing further the critical importance of restoring and maintaining environmental quality to the overall welfare and development of man, declares that it is the continuing policy of the Federal Government * * * to use all practicable means and measures * * * to create and maintain conditions under which man and nature can exist in productive harmony, and fulfill the social, economic, and other requirements of present and future generations of Americans.

"(b) In order to carry out the policy set forth in this chapter, it is the continuing responsibility of the Federal Government to use all practicable means * * * to improve and coordinate Federal * * * programs * * *." (Emphasis added.)

"§ 4332. * * *

"The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this chapter, and (2) all agencies of the Federal Government shall—

* * * * * *

"(C) include in every recommendation or report on proposals for . . . major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

"(i) the environmental impact of the proposed action,

"(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

"(iii) alternatives to the proposed action,

"(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

"(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented." (Emphasis added.)

It is conceded that no NEPA environmental impact statement pursuant to § 4332(2) (C) (quoted above) has been prepared. Further, defendants do not argue that Park Freeway-West is not a "major Federal action significantly affecting the quality of the human environment." Rather defendants contend that (1) the freeway at issue received

federal design approval prior to NEPA's effective date—January 1, 1970—and that (2) because of the highway's stage of construction, NEPA does not apply. Several of the circuit courts of appeal have addressed themselves to similar defenses of "nonretroactivity" with regard to both highway construction and other forms of federal action. Reviewing these cases as well as the "Guidelines for Federal Agencies" issued by the Council on Environmental Quality, I find defendants' position to be presently unconvincing.

The District of Columbia Circuit was the initial circuit to deal with what has been termed the "retroactive" effect of NEPA. In Calvert Cliffs' Coordinating Committee v. United States Atomic Energy Commission, 146 U.S.App.D.C. 33, 449 F.2d 1109 (1971), the D. C. Circuit dealt with the Atomic Energy Commission's two-step approval of nuclear power facilities in situations where the first step, construction approval, took place *prior* to NEPA but the second step, the granting of an operating license (after completion of construction), would take place *after* NEPA. The court ruled that in such situations NEPA was applicable to the ongoing construction program and that the construction projects would have to be reviewed in order to determine whether alterations in construction should be ordered in light of environmental considerations. A similar result was ordered by the Second Circuit in Greene County v. F. P. C., 455 F.2d 412, (2d Cir.1972). In that case the Federal Power Commission had approved the construction and operation of a large electric power complex prior to NEPA's effective date. However, the necessary approval for construction of transmission lines was not granted until after January 1, 1970. The Second Circuit held that NEPA was applicable to the approval of the construction of the power lines. In National Helium v. Morton, 455 F.2d 650, (10th Cir.1971), the Tenth Circuit held that when the Secretary of Interior had entered into a purchase contract containing a termination clause

prior to January 1, 1970, NEPA applied when the Secretary sought to terminate the contract pursuant to the termination clause after NEPA's effective date.

Applying these three cases to the facts before me, I find that they support plaintiffs' position. These cases would appear to stand for the proposition that NEPA is applicable even when the basic federal action has taken place prior to the Act's effective date so long as some federal approval or action remains to be given. *Calvert Cliffs' Coordinating Committee,* supra, arguably stands for the proposition that NEPA applies to any ongoing construction project as of January 1, 1970, regardless of whether future federal approval is necessary. In the case before me, federal P. S. & E. approval remains to be given and actual freeway construction has yet to begin.

Turning next to those circuit decisions involving highway construction, I find that these cases, too, support plaintiffs' position. In Lathan v. Volpe, 455 F.2d 1111, (9th Cir.1971), the Ninth Circuit held that NEPA applied to an interstate highway for which federal location approval was given in 1963. It was specifically noted in that decision that construction of a federal-aid highway is essentially a five-stage procedure (i. e., program, location, design, right-of-way acquisition, and construction), and that the Government is not committed to approval of any later stage because of its approval of earlier stages.

In the recent Fourth Circuit case entitled Arlington Coalition v. Volpe, 458 F. 2d 1323 (4th Cir.1972), the defendants claimed that NEPA did not apply retroactively, i. e., the highway project at issue was in progress prior to January 1, 1970. The Fourth Circuit, while it agreed in general that NEPA did not apply retroactively, rejected defendant's definition of the term. Likewise it rejected a definition of retroactive keyed to any "critical" federal approval. Rather it found that the crucial cutoff point was when "the costs of altering or abandoning the project could so definite-

ly outweigh whatever benefits that might accrue therefrom that it might no longer be 'possible' to change the project in accordance with Section 102 [of NEPA]." Id. 458 F.2d at 1331. Applying this test to the facts of the case before it, it found that although federal location and design approval had been granted and over 90 per cent of the right-of-way acquired, it was "certain" that the highway had not reached "the point of completion beyond which Section 102(C) is no longer applicable. * * * P. S. & E. approval has not been given, construction contracts have not been awarded, and actual construction on the highway itself has not begun." Id. 458 F.2d at 1332.

Defendants in the instant case rely upon the Third Circuit's decisions in Pennsylvania Environmental Council v. Bartlett, 454 F.2d 613 (3rd Cir.1971), and Concerned Citizens v. Volpe, 459 F. 2d 332 (3rd Cir.1972). Both cases found that NEPA was inapplicable to the highways at issue because NEPA does not have retroactive effect. In *Pennsylvania Environmental Council*, however, "The Secretary's action approving Pennsylvania's application took place on November 20, 1969, and construction contracts were awarded on December 29, 1969. The only duty remaining on the Secretary after November 20, 1969 was to make a final inspection of the project after construction." 454 F.2d at 624. In *Concerned Citizens* the only federal funding involved was to purchase right-of-way. Federal approval for this funding was given in 1967.

Applying the above cases to the dispute before me, I find that as in *Lathan* and unlike *Pennsylvania Environmental Council* and *Concerned Citizens,* federal approval—P. S. & E.—remains to be granted. Applying the well reasoned approach of *Arlington Coalition,* it is clear that, just as in that case, P. S. & E. approval has not been given, no construction contracts have been awarded, and no construction has begun.

Finally, applying to this case the "Guidelines for Federal Agencies under the National Environmental Policy Act" issued by the Council on Environmental Quality, 36 Fed.Reg. 7724, E.R.C. "Federal Laws" § 71:0301, it would seem reasonably probable that NEPA applies. Section 11 of the Guidelines reads as follows:

"11. *Application of section 102(2) (C) procedure to existing projects and programs.* To the maximum extent practicable the section 102(2) (C) procedure should be applied to further major federal actions having a significant effect on the environment even though they arise from projects or programs initiated prior to enactment of the Act on January 1, 1970. Where it is not practicable to reassess the basic course of action, it is still important that further incremental major actions be shaped so as to minimize adverse environmental consequences. It is also important in further action that account be taken of environmental consequences not fully evaluated at the outset of the project or program."

Even assuming that location and design approval together with right-of-way acquisition so freezes Park Freeway-West that it is "not practicable to reassess the basic course of action," there would still appear to be room to shape specific construction projects "so as to minimize adverse environmental consequences" that might be discovered after a NEPA impact study.

■ Defendants also assert that Wisconsin has already weighed the environmental impact of Park Freeway-West. For purposes of NEPA, however, this is not satisfactory. NEPA's requirements attach to the federal agency, not to the recipient of the federal aid, and it is the federal agency which must prepare the impact statement and balance the project's worth in light of the environmental consequences. Greene County v. F.P.C., 455 F.2d 412 (2d Cir.1972).

■ Finally, defendants contend that plaintiffs have failed to demonstrate that continued construction of Park

Freeway-West during the pendency of this action will cause irreparable harm. In Lathan v. Volpe, 455 F.2d 1111 (9th Cir.1971), a similar argument was answered as follows:

"We think, however, that this is one of the exceptional cases falling within the principle announced by the Supreme Court in United States v. City and Council of San Francisco, 1940, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050. There, in answer to a similar argument, the Court said (pp. 30–31, 60 S.Ct. 749):

" '. . . we are satisfied that this case does not call for a balancing of equities or for the invocation of the generalities of judicial maxims in order to determine whether an injunction should be issued. . . . The equitable doctrines relied on do not militate against the capacity of a court of equity as a proper forum in which to make a declared policy of Congress effective.' "

The Seventh Circuit has just recently stated that:

" * * * failure to comply * * * [with the NEPA procedure] is basis for an injunction. * * *

"Judicial relief is available to correct failure on the part of a federal agency to follow the procedural requirement under NEPA." Bradford Township v. Illinois State Toll Highway Authority, 463 F.2d 537 (7th Cir. 1972).

I have found above that there is a substantial probability that NEPA is applicable to the freeway at issue here today. And "It is far more consistent with the purposes of the Act to delay operation at a stage where real environmental protection may come about than at a stage where corrective action may be so costly as to be impossible." Calvert Cliffs' Coordinating Committee v. United States Atomic Energy Commission, 146 U.S.App.D.C. 33, 449 F.2d 1109, 1128 (1971). Failure to grant a preliminary injunction at this time would allow further investment of re-sources into Park Freeway-West, making its abandonment or alteration in light of environmental concerns increasingly costly and increasingly difficult. Indeed it might even cost plaintiffs their case, for if construction continues it might well reach the stage where NEPA would be inapplicable. See Arlington Coalition v. Volpe, 458 F.2d 1323, (4th Cir.1972). Given these circumstances, I find that plaintiffs' motion should be granted.