**COLONY FEDERAL SAVINGS & LOAN ASSOCIATION, Plaintiff,**

v.

**Patricia Roberts HARRIS, Secretary, Department of Housing and Urban Development and Department of Housing and Urban Development and County of Beaver, Pennsylvania and Beaver County Planning Commission and Beaver County Redevelopment Authority and Direction Associates Inc., Defendants.**

Civ. A. No. 79-354.

United States District Court,
W. D. Pennsylvania.

Jan. 8, 1980.

John Alan Conte, Conte & Courtney, Conway, Pa., for plaintiff.

George A. Verlihay, Whitmire & Verlihay, Beaver Falls, Pa., Robert J. Master, Beaver, Pa., Richard P. Steward, New Brighton, Pa., for County defendants.

Judith Giltenboth, Asst. U. S. Atty., Pittsburgh, Pa., for Federal defendants.

## OPINION

COHILL, District Judge.

This Court has before it the motions to dismiss filed by five of the six defendants in this action for declaratory and injunctive relief under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., the Administrative Procedure Act ("APA"), 5 U.S.C. § 501 et seq. and the Housing and Community Development Act ("HCDA"), 42 U.S.C. § 5301 et seq. Resolution of these motions turns on an assessment of the defendants' various legal responsibilities to the plaintiff, the public and the environment under these acts.

The plaintiff is Colony Federal Savings and Loan Association ("Colony"), a banking institution with offices in Monaca, Pennsylvania. The defendants are the United States Department of Housing and Urban Development ("HUD"), and its Secretary, the County of Beaver, the Beaver Planning Commission, the Beaver County Redevelopment Authority, and Direction Associates, Inc., a consulting firm. Only Beaver County did not move to dismiss.

### The Acts and Regulations

The National Environmental Policy Act, passed in 1969, reflects our country's increased awareness that routine decisions of government agencies may have profound and irreversible effects on the natural environment. Since our physical environment cannot speak for itself and might otherwise be overlooked, NEPA mandates that an environmental analysis precede every major federal project. The analysis must be formalized in an "Environmental Impact Statement" pursuant to section 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(C), which requires federal agencies:

[to] include in every recommendation or report on proposals for legislation and other major federal actions significantly affecting the quality of the human environment, a detailed statement . . . by the responsible official.

Case law reaffirms that NEPA was enacted to protect the environmental interests of all citizens by making consideration of environmental factors a *primary* duty of all federal agencies. *City of Davis v. Coleman*, 521 F.2d 661, 678 (9th Cir. 1975); *Environmental Defense Fund v. Tennessee Valley Authority*, 468 F.2d 1164, 1182–83 (6th Cir. 1972). The purpose of § 4332(2)(C) is to assure that agencies will be fully

aware of the impact of their decisions before implementing them; it has been called the "environmental full disclosure law." *Sierra Club v. Froehlke,* 368 F.Supp. 231 (D.Tex.1973).

HCDA was enacted for purposes somewhat different from NEPA. In § 5301(c) Congress provided:

> The primary objective of this chapter is the development of viable urban communities, by providing decent housing and a suitable living environment and expanding economic opportunities, principally for persons of low and moderate income.

Although preservation of a healthy urban environment was an integral part of the statutory scheme, the primary thrust of the new legislation was economic. See § 5301(a)(1) and (2), § 5301(b), § 5301(c)(6). There is another difference between the acts: whereas NEPA is centripetal, directing the responsibility for environmental analysis to the federal agencies involved in projects subject to its terms, HCDA operates by centrifugal force, directing the responsibility for urban redevelopment to the local communities which benefit under its provisions. Sections 5303 and 5304 authorize the Secretary of HUD to approve grant applications by states or local communities pursuant to enumerated procedures. Limited discretion in disapproving applications is given to the Secretary under 42 U.S.C. § 5304(c), which provides:

> The Secretary *shall* approve an application for an amount which does not exceed the amount determined in accordance with section 5306(a) of this title unless—
>
> (1) on the basis of significant facts and data, generally available and pertaining to community and housing needs and objectives, the Secretary determines that the applicant's description of such needs and objectives is plainly inconsistent with such facts or data; or
>
> (2) on the basis of the application, the Secretary determines that the activities to be undertaken are plainly inappropriate to meeting the needs and objectives identified by the applicant pursuant to subsection (a) of this section; or

> (3) the Secretary determines that the application does not comply with the requirements of this chapter or other applicable law or proposes activities which are ineligible under this chapter. (Emphasis added.)

Several sections of the Act emphasize that procedures are "streamlined" to provide assistance quickly and efficiently. *See* § 5301(b)(3) ("continuing effort at all levels of government to streamline programs"); § 5301(d)(1) ("provides assistance . . . with maximum certainty and minimum delay"); § 5304(b) (cutting red tape).

■ The relationship between NEPA and HCDA was considered by Congress and explicitly provided for in § 5304(h)(1) of the latter. That section states:

> In order to assure that the policies of the National Environmental Policy Act of 1969 are most effectively implemented in connection with the expenditure of funds under this chapter, and to assure to the public undiminished protection of the environment, the Secretary, in lieu of the environmental protection procedures otherwise applicable, may under regulations provide for the release of funds for particular projects to applicants who assume all of the responsibilities for environmental review, decisionmaking, and action pursuant to such Act that would apply to the Secretary were he to undertake such projects as Federal projects. The Secretary shall issue regulations to carry out this subsection only after consultation with the Council on Environmental Quality.

A subsection, § 5304(h)(3)(D), also provides that the grant applicant must:

> (i) consent[ ] to assume the status of a responsible Federal official under the National Environmental Policy Act of 1969 insofar as the provisions of such Act apply pursuant to paragraph (1) of this subsection, and (ii) [be] authorized and consent[ ] on behalf of the applicant and himself to accept the jurisdiction of the Federal courts for the purpose of enforcement of his responsibilities as such an official.

Thus, it is clear that Congress intended to transfer the normal NEPA responsibilities from federal officials to state or local officials, consistent with other decentralization policies of the HCDA. Regulations implementing this provision require the local entity to prepare and make available to interested parties an Environmental Review Record. 24 CFR § 58.11.

However, the Congressional scheme does not totally relieve federal officials and agencies of accountability for their decisions. Under the APA, 5 U.S.C. § 706, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions" which fail any of six enumerated standards. An agency decision must be overturned if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or if it fails to meet statutory, procedural, or constitutional standards, 5 U.S.C. § 706(2)(B), (C), (D). (Other tests for very narrow circumstances are not applicable here. 5 U.S.C. § 706(2)(E), (F).)

The motions before us require us to decide what the responsibilities of the parties are under NEPA, HCDA, and the APA and whether, in this case, those responsibilities have been properly executed as a matter of law.

### The Facts of the Case

The Phoenix Glass Company, a local manufacturer and subsidiary of Anchor Hocking, Inc., operated a plant in Monaca, Pennsylvania, for many years. On July 14, 1978, the plant was destroyed by fire. In addition to $20,000,000.00 in losses to the company, over 600 jobs were lost. Phoenix intends to rise again from the ashes, but it may be in some location other than Monaca, where it may expand as well as rebuild. In order to keep the plant in Monaca—and the coincident jobs and tax base—the County of Beaver proposed a project to acquire land for reconstruction and expansion of the Phoenix facility. Under this plan and utilizing federal funds, the Beaver County Redevelopment Authority would acquire the needed parcels contiguous to Phoenix's present site, rezone the land for industrial purposes, and then resell it to Phoenix. The vehicle for federal funding was to be an Urban Development Action grant, authorized by the HCDA. The County believed it would be eligible under this grant since the properties to be acquired were "blighted." Eighty-three parcels were involved, almost one third of them business properties and the others residential.

Beaver County was the grant applicant. It applied for an Urban Development Action grant in October, 1978, requesting a sum in excess of three million dollars. After reviews by various HUD officials in Pittsburgh and in Washington, preliminary approval was granted for a slightly lesser sum. As part of its application, Beaver County submitted a certification pursuant to 42 U.S.C. § 5304(h), agreeing to take the place of federal officials for NEPA purposes, and also submitted a "Notice of Finding of No Significant Effect on the Environment." The latter had been published once in a local paper with an open invitation to the public to review the Environmental Review Record which the County had prepared and offer written comments to the County. A similar, one-time publication was made prior to release of funds. Grant monies were ultimately released in the spring of 1979 and are presumably still being received.

Colony Federal Savings & Loan Association, apparently unaware of this project until late 1978, purchased a parcel of land within the proposed redevelopment area for a new banking office. Colony's requests to local officials for exemption from the project having been denied, Colony filed this suit, alleging that various local and federal entities failed to comply with federal laws protecting the environment when this project was studied and approved.

Colony charges that the federal defendants abused their discretion by not preparing a federal environmental impact statement, by failing to critically evaluate the County's environmental review before approving its application, by failing to continuously monitor compliance of the County with HUD requirements, and by providing insufficient opportunity for public partici-

pation in the decision to expand the Phoenix plant facilities. It also contends that the environmental review record prepared by local officials through a consulting firm and submitted by the County was cursory, insufficient, and misleading. Colony challenges specific findings in the environmental review record, particularly the conclusion that the properties to be acquired were blighted.

### Discussion

Beaver County has filed no motion to dismiss. The motions of the other five defendants raise difficult issues on the interrelationship of these federal acts. The issues presented are:

(1) Where a county is a grant applicant for HCDA funds under § 5304, assuming NEPA responsibilities in place of the federal agency, may a claim under NEPA be stated against the County Redevelopment Authority, the County Planning Commission, or a consulting firm hired by the County to analyze the environmental impact of the county project for which federal funds are sought?

(2) Where Congress has delegated NEPA duties to a local entity, is the federal agency which would have otherwise borne NEPA responsibility required to complete an environmental impact study, particularly where that agency approves numerous projects under the Congressional scheme?

(3) Are HUD and its Secretary required to critically evaluate the environmental review completed by grant applicants under HCDA, § 5304(h), and, if not, what is the extent of their responsibility to review imposed by the APA?

(4) After federal officials have approved a grant application under § 5304(h), do they have an ongoing duty to monitor the project?

(5) Is publication in a local newspaper sufficient notice of an Urban Development Action grant project to meet HUD requirements for citizen participation?

### A. The Non-Federal Defendants

■ The Beaver County Planning Commission, the County Redevelopment Authority, and Direction Associates, Inc., all move to dismiss Colony's complaint against them for failure to state a claim upon which relief can be granted. These motions must be granted.

Plaintiff's complaint is in essence an action under NEPA, albeit through the HCDA, alleging failure of the responsible government agencies and officials to comply adequately with NEPA's mandate that a complete environmental assessment precede any major federal project. Thus, the only proper defendants in this action are those with statutory responsibilities under NEPA or HCDA. Had the HCDA not intervened, a direct cause of action under NEPA against these local entities would fail since NEPA creates a duty only on the part of the "responsible federal officials," 42 U.S.C. § 4332; *City of Davis v. Coleman,* 521 F.2d 661 (9th Cir. 1975); *Committee to Stop Route 7 v. Volpe,* 346 F.Supp. 731 (D.Conn.1972); *Northside Tenants' Rights Coalition v. Volpe,* 346 F.Supp. 244 (D.Wisc. 1972). Under 42 U.S.C. § 5304(h), (i) and (h)(3)(D), the grant applicant explicitly assumes the role of a "responsible federal official" for NEPA purposes. Subsection (h)(3)(D) requires that the grant applicant not only "consent [ ] to assume the status of a responsible Federal official" under NEPA but also that he be authorized and consents "on behalf of the applicant and himself to accept the jurisdiction of the Federal courts for the purpose of enforcement of his responsibilities as such an official." Since the consulting firm and the local entities—the Planning Commission and Redevelopment Authority—would not be proper parties were this suit brought against federal officials with sole NEPA duties, we can see no reason for treating them differently simply because a county has replaced the federal agency pursuant to a Congressional mandate. Moreover, since the actions of these three parties relative to NEPA responsibilities were directly controlled by the County, they are not essential to a just adjudication of this issue. The County is accountable for any failings of theirs that affected the environmental review record. See *Essex County Preservation Ass'n. v. Campbell,* 536 F.2d

956 (2d Cir. 1976), where it was held that a federal agency employing a consulting firm for preparation of an environmental impact statement must bear responsibility for the ultimate work product.

The Beaver County Planning Commission, the Redevelopment Authority, and Direction Associates, Inc., must therefore be dismissed from this suit.

### B. *Federal Responsibility to File an Impact Statement*

■ The HCDA makes very clear that NEPA duties are transferred from the federal agency to the grant applicant. However, the plaintiff argues that although a federal impact statement for an individual HCDA project is rendered unnecessary, the fact that HUD is approving large numbers of applications for funds for urban development projects creates a separate responsibility to consider the aggregate environmental effects of these projects. We cannot agree.

■ There is substantial case law establishing that large projects may not be artificially segmented into smaller ones for the purpose of avoiding NEPA or minimizing the appearance of adverse environmental impact. *City of Rochester v. U. S. Postal Service,* 541 F.2d 967 (2d Cir. 1976); *Alpine Lakes Protection Soc. v. Schlapfer,* 518 F.2d 1089 (9th Cir. 1975). A major federal project may require an impact statement for itself and still be part of a larger federal scheme requiring a separate, more encompassing impact statement. *Sierra Club v. Morton,* 169 U.S.App.D.C. 20, 514 F.2d 856 (D.C. Cir. 1975) rev'd on other grounds, 427 U.S. 390, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1977). Many of the cases which have ordered programmatic impact statements to cover the cumulative effects of a series of government projects have involved highway construction. *E. g., Indian Lookout Alliance v. Volpe,* 484 F.2d 11 (6th Cir. 1973); *Patterson v. Exon,* 415 F.Supp. 1276 (D.Neb.1976); *Appalachian Mountain Club v. Brinegar,* 394 F.Supp. 105 (D.N.H.1975). In the *Appalachian Mountain Club* case, the New Hampshire District Court held that the "piecemealing" of highway projects, without an overall assessment of the effects

of the completed highway, violated "the spirit and letter" of NEPA. A North Carolina District Court held another environmental impact study inadequate where it dealt with a watershed project and failed to consider future downstream flooding or the cumulative effect of several adjoining stream projects. *National Resources Defense Council, Inc. v. Grant,* 355 F.Supp. 280 (S.D.N.C.1973). Similarly, the Department of Agriculture failed to meet NEPA standards in its analysis of the effect of commercial logging in a wilderness area when it ignored what future sites would be logged and at what rate. *Minnesota Public Interest Research Group v. Butz,* 541 F. 1292 (8th Cir. 1976).

These cases establish that federal projects may not be viewed myopically where they will have a cumulative or aggregate impact on the human environment. This is obviously true where separate projects are close in geographical proximity or where they combine as links in a chain, as in the highway cases. However, the fact that a centralized agency of the government, such as HUD, approves numerous urban redevelopment projects all across the country does not, of itself, require that HUD prepare a programmatic preview to comply with NEPA. There has been no allegation that there are other projects closely related to this one which will combine with this one to make the whole effect greater than the sum of the parts. In *Environmental Defense Fund v. Armstrong,* 356 F.Supp. 131 (N.D. Calif.1973), where the environmental study preceding construction of a dam was challenged, a California District Judge wrote, "[s]o long as each major federal action is undertaken individually and not as an indivisible, integral part" of a larger system, NEPA requirements may be met on an individual basis rather than on a comprehensive one. While we might not go so far as to say that a series of projects must be indivisible before a combined statement will be required, we believe that precedent requires the projects to be substantially related to one another before a programmatic federal impact statement will be required. Although it might be wise or useful for HUD to analyze the environmental changes

wrought by many separate redevelopment projects under Urban Redevelopment Action Grant funding across the country, it is certainly not required by NEPA. Therefore, we hold that neither HUD nor its Secretary abused their discretion in failing to file a comprehensive federal impact statement on the effects of this project. However, we cannot dismiss these defendants without reviewing further responsibilities imposed by APA.

## C. Federal Responsibility to Evaluate or Monitor the Environmental Review and Procedures of the County

The last three issues concern the extent of the federal defendants' duties under HCDA and APA to critically evaluate the grant applicants' environmental review and to monitor compliance with HUD and NEPA regulations.

As we noted earlier, the HCDA intended to provide federal monies for projects which would be primarily planned and executed by local authorities, minimizing red tape and administrative delay. To require HUD to make an independent environmental analysis, where the grant applicant has assumed that duty, would be duplicative, wasteful, and contrary to the spirit as well as the explicit provisions of the act. The question, then, is how much of a critical evaluation the federal agency must make in order to comply with its APA responsibilities but without duplicating the efforts of the County.

The plaintiff attacks specific findings of the County's environmental analysis, including lack of consideration of the chronic particulate count in air quality, omission of increased vehicular traffic and increased noise levels, insufficient documentation that there are no historic properties in the area, characterization of the area as "blighted," and so on. While in no way minimizing the importance of these factors to the community, we cannot see how these factors could be critically reviewed by HUD without that agency performing its own independent study. This is particularly true where a grant applicant submits a detailed and documented review record that is at least facially consistent and in compliance with the

applicable rules. In *Pennsylvania Environmental Council, Inc. v. Bartlett,* 315 F.Supp. 238 (E.D.Pa.1970), where a state had fully investigated the impact of a secondary highway project and certified its recommendation to the Secretary of Transportation, the Secretary was not required to make an independent evaluation that would simply duplicate the state's efforts. This holding makes good sense where another agency has explicitly agreed to be responsible for its environmental findings to the extent of agreeing to be sued in federal court in place of the federal agency. *See* 42 U.S.C. § 5304(h)(3)(D)(ii). Although a "pro forma" environmental review is not sufficient under NEPA where the federal agency bears the primary responsibility, *Sierra Club v. Lynn,* 502 F.2d 43 (5th Cir. 1974), *cert. denied* 421 U.S. 994, 95 S.Ct. 2001, 44 L.Ed.2d 484 (1975), the environmental record is no longer the burden of the federal agency under HCDA. Therefore, we hold that neither the Secretary nor HUD has an independent duty to evaluate the conclusions of an environmental review record where such a record is facially complete and in accord with HUD regulations. We also note that NEPA has never required that federal decisions turn on the extent of impact to the environment, only that the environment be considered objectively and in good faith. *Sierra Club v. Morton,* 510 F.2d 813 (4th Cir. 1975).

However, the APA requires administrative agents and agencies to be vigilant that regulations are followed. Here, it appears from the plaintiff's allegations that the County failed to adequately comply with a HUD regulation requiring notice to "interested parties" involved in an Urban Development Action grant project.

Federal regulations implementing the HCDA, published at 24 C.F.R. § 5817(b) provide:

> *Public and dissemination.* Copies of the Notice of Intent to File an [environmental impact statement] shall be sent to the local news media, *individuals and groups known to be interested in the applicant's activities,* local, state, and Federal agencies, the A–95 clearinghouse and others believed appropriate by the

applicant. Such notice shall be published at least once in a newspaper of general circulation in the affected community, and shall be filed with the HUD official authorized to receive the application. (emphasis added).

Although the county did publish notices concerning this project in the local newspaper on two separate occasions, the plaintiff claims that it never notified the individuals most directly interested in, and affected by, the proposed project—those whose properties would ultimately be condemned.

■ Citizen participation is a vital ingredient in the success of NEPA. Many cases have reviewed the extent of public participation provided by federal agencies before deciding to proceed with a federal project adversely affecting the environment. *E. g., Hanly v. Kleindienst,* 471 F.2d 823 (2d Cir. 1972), *cert. denied* 412 U.S. 908, 93 S.Ct. 2290, 36 L.Ed.2d 974 (1973); *Natural Helium Corp. v. Morton,* 486 F.2d 995 (10th Cir. 1973), *cert. denied* 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1973). An opportunity for local citizens or other interested parties to participate in the preparation of the environmental analysis is *mandatory* under NEPA. *National Ass'n. of Government Emp. v. Rumsfeld,* 418 F.Supp. 1302, 1307 (E.D.Pa.1976). We agree with Colony that the property owners in the redevelopment area are arguably the most interested parties to be found.

■ It may be that failure to provide proof of notice of the project to these landowners pursuant to 24 C.F.R. § 5817(b) rendered the application submitted by the county facially incomplete and in violation of the applicable regulations so that the federal agency's responsibility under the APA, 5 U.S.C. § 706(2)(B), (C)—to be sure that statutory and procedural requirements have been met—was triggered. However, we need not decide that because even if the grant application appeared complete and in compliance with all the applicable regulations, the federal agency has since been put on notice by Colony that an important procedural step may have been omitted. One district court has held that it is appropriate for a federal court to review the propriety of urban redevelopment grants where agen-

cy action is attacked under the APA, 5 U.S.C. § 706(2). *City of Hartford v. Hills,* 408 F.Supp. 889 (D.Conn.1976). That case held that the approval by the Secretary of HUD of a grant application without considering generally available information which may have contradicted the application was an abuse of discretion. Here, we need hold only that the failure of the federal defendants to review the sufficiency of notice to interested parties and to require notice, once such a serious omission was alleged, requires that the federal defendants remain parties to this suit until such allegation can be aired at a hearing. Failure to respond to these allegations may be a violation of the federal duty to monitor the project to see that all procedural steps were properly followed. We need not reach the question of the actual sufficiency of the 24 C.F.R. § 5817(b) notice on the motion to dismiss.

To summarize: we hold that neither HUD nor its Secretary had a legal obligation under NEPA to prepare a separate environmental impact statement; nor did they have a duty to critically evaluate the *substance* of the environmental analysis prepared by the County as a grant applicant under the HCDA. However, the federal defendants did have a duty under the HCDA, 42 U.S.C. § 5304(c)(3), and the APA, 5 U.S.C. § 706(2)(B), (C), to review the grant applicant to see that *procedural* requirements were met and that applicable federal regulations were followed. Once put on notice that a serious procedural omission may have occurred, the federal defendants had a duty to monitor compliance with the regulation allegedly omitted. Failure to notify such interested parties as the affected property owners in the area covered by the environmental analysis where they are relatively few in number and the plan contemplates condemnation of their properties is a sufficient allegation of a procedural omission to require action by the federal entities as the overseers of an urban redevelopment project.

The motion of the federal defendants to dismiss the claims against them will therefore be denied. An appropriate order will be entered.