The DICKEYVILLE ASSOCIATION, Plaintiff,

v.

The UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Defendant.

Civ. A. No. HAR 85–4296.

United States District Court, D. Maryland.

June 4, 1986.

Anne K. Pecora, Baltimore, Md., for plaintiffs, Dickeyville Ass'n.

J. Sedwick Sollers, III, Asst. U.S. Atty., Baltimore, Md., for defendant U.S. Dept. of Housing and Urban Development.

## MEMORANDUM OPINION

HARGROVE, District Judge:

Presently pending before this Court are the plaintiff's Motion for a Preliminary Injunction pursuant to Fed.R.Civ.P. 65 and the defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). On April 11, 1986, the Court heard oral arguments on the outstanding motions. For the reasons set forth below, the Court will grant the defendant's Motion to Dismiss. In light of the Court's ruling on the Motion to Dismiss, the Court need not reach the plaintiff's request for a preliminary injunction.

## I. FACTUAL AND STATUTORY BACKGROUND

The plaintiff in this case is a neighborhood association whose members reside in the Dickeyville section of Baltimore. The plaintiff brought this declaratory judgment action in October, 1985. On January 21, 1986, the plaintiff filed a Motion for a Preliminary Injunction to enjoin the United States Department of Housing and Urban Development (HUD) from further financial participation in the construction of the Dickey Hill Forest Apartments. The plaintiff argues, in essence, that HUD's decision to accept the City of Baltimore's determination that the housing project will not have significant impact on the environment violates the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.;* the regulations implementing NEPA, 40 C.F.R. § 1500 *et seq.;* and HUD's regulations implementing NEPA, 24 C.F.R. § 58 *et seq.* The plaintiff asks this Court to enjoin HUD from further participation in the project until HUD has prepared an environmental impact statement assessing the project's effect on the local sewer system.

The Dickey Hill Forest Apartments is a 204-unit privately owned housing project which is to be financed in part with a loan from the City of Baltimore. The loan was made in the form of a Housing Development Grant ("HODAG"). HODAG awards are authorized by Section 17 of the United States Housing Act of 1937, 42 U.S.C. § 1437*o* (d). Under Section 17(i)(2) of the Housing Act, 42 U.S.C. § 1437*o* (i)(2), HODAG program resources are subject to the environmental requirements of Section 104(f) of the Housing and Community Development Act ("HCDA"), 42 U.S.C. § 5301 *et seq.* The HCDA, in turn, specifically provides that the policies of the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4321 *et seq.,* are to be "effectively implemented" when HCDA funds are expended. 42 U.S.C. § 5304(f). In short, under these federal statutes, both the federal agency (in this case HUD) and

the HODAG recipient (in this case the City of Baltimore) have certain responsibilities to assure that the requirements of NEPA have been met.

Congress enacted NEPA in an effort to assure that major federal projects are preceded by a thoughtful assessment of the way in which the proposed project will affect the environment. *See Colony Federal Savings and Loan Association v. Harris,* 482 F.Supp. 296, 298 (W.D.Pa.1980). The regulations implementing NEPA outline a two-step procedure designed to formalize the inquiry into the nature and extent of a project's impact on the environment. 40 C.F.R. § 1500 *et seq.*

Under the NEPA regulations, the agency first prepares an environmental assessment (hereinafter referred to as an "EA") to determine whether the proposed project is one which will have a significant impact on the environment. 40 C.F.R. § 1508.13. If the EA reveals that the project will have a significant effect on the environment, then the agency proceeds to the second step and prepares an environmental impact statement (hereinafter "EIS"). 40 C.F.R. § 1501.4. An EIS provides a "full and fair discussion of significant environmental impacts and ... [informs] decision-makers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment." 40 C.F.R. § 1502.1.

If, on the other hand, the EA reveals that the proposed project will not have a significant impact on the environment, the agency need not complete an environmental impact statement. 40 C.F.R. § 1501.4.

As noted, NEPA's requirements are applicable to expenditures made under the HODAG program. 42 U.S.C. § 1437*o* (i)(2); 42 U.S.C. § 5304. While the federal agency overseeing the expenditures is generally responsible for assuring compliance with NEPA, 40 C.F.R. § 1507.1, the HCDA specifically provides a mechanism by which the federal agency may delegate its NEPA responsibilities to a grant recipient. 42 U.S.C. § 5304(f)(1) provides *inter alia:*

> In order to assure that the policies of the National Environmental Policy Act of 1969 [42 U.S.C. § 4321 *et seq.*] and other provisions of law which further the purposes of such Act (as specified in regulations issued by the Secretary) are most effectively implemented in connection with the expenditure of funds under this chapter, and to assure to the public undiminished protection of the environment, *the Secretary, in lieu of the environmental protection procedures otherwise applicable, may under regulations provide for the release of funds for particular projects to recipients of assistance under this chapter who assume all of the responsibilities for environmental review, decisionmaking, and action pursuant to such Act,* ... (emphasis added)

The statute continues to describe the manner in which the grant recipient may certify that it has carried out its NEPA responsibilities. 42 U.S.C. § 5304(f)(3).

## II. MOTION TO DISMISS

The defendant HUD has filed a Motion to Dismiss the plaintiff's complaint on the grounds that the complaint fails to state a claim upon which relief may be granted.[1] The Motion to Dismiss raises matters outside the pleadings. Accordingly, the defendant's motion will be treated as one for summary judgment. Fed.R.Civ.P. 12(c).

Neither party disputes that the defendant, HUD, as the federal agency funding the project, must comply with NEPA, the NEPA regulations, the HCDA and the HCDA regulations. Nevertheless, the parties disagree about the precise nature and extent of HUD's responsibilities in the instant case.

The defendant reasons that HUD has legitimately acted pursuant to 42. U.S.C. § 5304(f) and has delegated its responsibilities for compliance with NEPA to the City

---

1. In support of its Motion to Dismiss, the defendant also argues that, to the extent the plaintiff's claims involve the sewer system, the plaintiff's claims are moot. Because the court has resolved the motion on other grounds, we need not reach the mootness issue.

of Baltimore. The defendant concedes that HUD retains some responsibilities but argues that those responsibilities are limited to assuring that the grant recipient has complied with NEPA's procedural requirements. Defendant's Memorandum at 2–5. HUD insists that it has met its limited obligation to assure procedural compliance and thus, HUD reasons, it cannot be held accountable for any alleged substantive deficiencies in the environmental assessment performed by the City.

The plaintiff, in its written memorandum, relies on NEPA's implementing regulations and argues that, despite the fact that HUD has delegated its environmental compliance obligations to the City, HUD nevertheless has a responsibility to "make its own evaluation of the environmental issues and [must] take responsibility for the scope and content of the environmental assessment." Plaintiff's Memorandum at 4, citing 40 C.F.R. § 1508.13. During oral arguments before this Court, the plaintiff shifted the focus of its argument. The plaintiff conceded that HUD's responsibilities were indeed limited to assuring compliance with NEPA's procedural requirements. Thus, during oral argument, the plaintiff conceded that HUD may delegate its substantive responsibilities under NEPA to the grant recipient. Nevertheless the plaintiff insisted that the City's decision not to prepare an environmental impact statement in the instant case was a procedural failure for which HUD must be accountable.

Thus, the preliminary issue presented to the court is one of the precise nature of defendant HUD's responsibilities under NEPA, the HCDA in general and § 5304 in particular. The critical corollary issue is whether HUD has fulfilled its obligations in the instant case.

In enacting 42 U.S.C. § 5304,[2] Congress specifically authorized a procedure by which HUD may delegate its responsibility for NEPA compliance to the grant recipient. *National Center for Presentation Law v. Landrieu*, 496 F.Supp. 716, 731 (D.S.C.1980), aff'd., 635 F.2d 324, 326 (4th

Cir.1980) (per curiam); *Brandon v. Pierce*, 725 F.2d 555, 560 (10th Cir.1984). Thus, under § 5304, fulfillment of the primary obligations under NEPA shifts from the federal agency to the local recipient. *See Crosby v. Young*, 512 F.Supp. 1363, 1381 (D.C.Mich.1981); *Monarch Chemical Works, Inc. v. Exxon*, 466 F.Supp. 639, 646 (D.Neb.1979). Section 5304 provides that the grant recipient must certify that the delegated responsibilities have been assumed. 42 U.S.C. § 5304(f)(3)(D). In addition, the grant recipient must agree to accept the jurisdiction of the federal courts for the purpose of enforcement of the NEPA obligations it has assumed. *Id.*

■ Once HUD has acted pursuant to § 5304 to delegate its NEPA duties, HUD's responsibilities are limited to assuring that the recipient has complied with the HCDA's *procedural* requirements. *Colony Federal Savings and Loan Association v. Harris*, 482 F.Supp. 296, 304 (W.D.Pa. 1980), *Crosby*, 512 F.Supp. at 1383.

In *Colony*, the court emphasized that once HUD has reviewed the local recipient's record for procedural compliance with the HCDA regulations, HUD's responsibilities end: "HUD has no independent duty to evaluate the conclusions of an environmental review record where such record is factually complete and in accordance with HUD regulations." 482 F.Supp. at 303. Nevertheless, on the facts before it, the *Colony* court concluded that the HUD had been put on notice of a *procedural* defect in the local recipient's record. Specifically, the local recipient had arguably failed to provide local citizens with notice of its intent to prepare an environmental analysis. 482 F.Supp. at 304. Accordingly, the *Colony* court denied HUD's Motion to Dismiss on the grounds that the recipient's failure to notify interested parties was a "sufficient allegation of a procedural omission to require action by [HUD] . . . *Id.* (emphasis added)

In the instant case, the plaintiff has failed to point to any procedural deficien-

**2.** The relevant portion of 42 U.S.C. § 5304 is cited on page 5 of this Memorandum.

cies for which HUD may be held accountable.

On June 30, 1985, the City of Baltimore certified to HUD that it had completed an environmental assessment with respect to the Dickeyville project and had concluded that the proposed project would *not* have a significant impact on the environment. Thus, the City concluded that it need not complete an environmental impact statement. Defendant's Memorandum, Exhibit # 1.

On June 14, 1985, prior to submitting its certification to HUD, the City published notice of its finding that the project would not have a significant impact on the environment in the *News American. Id.* The *News American* notice invited written comments from interested persons and requested that such comments be submitted to the City on or before June 29, 1985. In addition, the *News American* notice provided that certain objections to HUD's approval of the Dickey Hill project could be addressed to HUD by July 14, 1985. However, the objections HUD would consider were specifically limited to those based on three narrow grounds: first, that "the certification was not in fact executed by the certifying officer"; second, that "the recipient's environmental review record for the project indicates omission of a required decision finding or step applicable to the project in the environment process"; or third, that "another federal agency has submitted a written finding that the project is unsatisfactory from the standpoint of environmental quality." *Id.*

Thus, the *News American* notice provided in essence, that comments reflecting disagreement with the City's finding of no significant impact should be addressed to the City and that objections to the release of funds on the three narrow procedural grounds catalogued above should be addressed to HUD.

Finally, the *News American* notice specifically acknowledged that the City had assumed responsibility for compliance with NEPA and that the City had accepted the jurisdiction of the federal courts in any action to enforce those responsibilities.

The plaintiff has raised no questions about the adequacy of the notice provided in the instant case. Rather, the plaintiff argues that the City's failure to follow its environmental assessment with an environmental impact statement is a procedural error for which HUD is responsible. In support of its argument, the plaintiff notes that the *News American* notice provided that objections to release the funds based on "omission of a required decision finding or step applicable to the project" should be addressed to HUD. Thus, the plaintiff reasons, the City's failure to proceed with an environmental impact statement was the "omission of a required decision finding" and as such was a procedural omission.

Despite the plaintiff's characterization to the contrary, this Court concludes that the City's decision not to prepare an environmental impact statement was a substantive decision for which the City, not HUD, is responsible.

Arguably, under certain circumstances, a decision not to follow an environmental assessment with an environmental impact statement might be deemed procedural. For example, if the City had completed its environmental assessment and concluded that the proposed project did have a significant impact on the environment, then perhaps the City's failure to proceed to the second step of the environmental analysis might be deemed a procedural error for which HUD remains responsible. However, these circumstances do not present themselves here. Rather, in the instant case, the City completed its environmental assessment and concluded that the project would not have a significant impact on the environment. Under both the NEPA and the HCDA regulations, once there was a finding of no significant impact, the City was not, as a procedural matter, obliged to proceed with an environmental impact statement. 40 C.F.R. 1501.-4; 24 C.F.R. 58.41.

In essence, the plaintiff contends that the City's finding that the proposed project would have no significant impact on

the environment was "not based on any substantive evidence" and was "unreasonable, arbitrary and capricious." Plaintiff's Memorandum at 8. In short, the plaintiff seeks to attack specific findings made by the City in its environmental assessment.[3] Nevertheless, if this Court were to hold HUD responsible for any alleged substantive deficiencies in the environmental assessment performed by the City, HUD would be forced to perform its own independent evaluation of the proposed project's impact on the environment. An independent review by HUD would violate the spirit of the HCDA. As the court noted in *Colony*, "To require HUD to make an independent environmental analysis, where the grant applicant has assumed that duty, would be duplicative, wasteful and contrary to the spirit as well as the explicit provisions of the [HCDA]." 482 F.Supp. at 303.

In sum, this Court concludes that the plaintiff's claim against defendant HUD must be dismissed. Once HUD delegated its responsibilities under NEPA to the City pursuant to 42 U.S.C. § 5304, HUD no longer had a duty to critically evaluate the substance of the environmental assessment performed by the City. *Landview*, 496 F.Supp. at 731. Rather, HUD's responsibilities were limited to assuring that the City had complied with applicable procedural requirements. *Id.*

In the instant case, there is no indication of any procedural deficiencies. The City's

finding that the proposed project would not have a significant impact on the environment was a substantive decision; once that finding had been made, the City was not obliged to proceed with an environmental impact statement.

As noted, the plaintiff has filed a Motion for a Preliminary Injunction, asking this Court to enjoin HUD from further participation in the Dickey Hill Apartment project until HUD has prepared an environmental impact statement. Because this Court concludes that the plaintiff's action must be dismissed for failure to state a claim against HUD, the Court need not consider the plaintiff's request for preliminary relief.[4]

---

**3.** The plaintiff came to the April 11, 1986 hearing before this Court with numerous witnesses prepared to testify about the way in which the proposed project will affect the sewer system in the Dickeyville area. The plaintiff's proffered testimony was apparently designed to illustrate that the City's environmental assessment had been cursory and that its finding of no significant impact had been arbitrary and capricious. *See* Plaintiff's Memorandum at 4–7.

This Court declined to hear the plaintiff's evidence on the grounds that evidence of the project's impact on the environment was not relevant to the issues presently pending before the court.

**4.** The Fourth Circuit has enunciated a four part test as the relevant standard to be applied by a district court faced with a Motion for Prelimi-

nary Injunction. *North Carolina State Parks Authority v. Dart Containerline Co.*, 592 F.2d 749 (4th Cir.1979); *Jones v. Board of Governors of the University of North Carolina*, 557 F.Supp. 263 (W.D.N.C.), aff'd. 704 F.2d 713 (4th Cir. 1983). The four factors this Court must consider in determining whether injunctive relief is appropriate in this case are:

(a) plaintiff's likelihood of success in the underlying dispute between the parties; (b) whether plaintiff will suffer irreparable injury if interim relief is denied; (c) the injury to defendant if an injunction is issued; and (d) the public interest. *Dart Containerline*, 592 F.2d at 750; *Jones*, 704 F.2d at 715.

In the instant case, the court, in granting the defendant's Motion to Dismiss, has concluded that the plaintiff has no likelihood of success on the merits.