ULSTER COUNTY COMMUNITY ACTION COMMITTEE, INC., et al., Plaintiffs,

v.

Francis R. KOENIG, as Mayor of the City of Kingston, New York, et al., Defendants.

No. 75 Civ. 3832 (HFW).

United States District Court, S. D. New York.

Oct. 17, 1975.

Mid-Hudson Valley Legal Services Project, Poughkeepsie, N. Y., for plaintiffs; John J. Kelly, Poughkeepsie, N. Y., of counsel.

City of Kingston Corporation Counsel, Kingston, N. Y., for defendants; Aaron E. Klein, Kingston, N. Y., of counsel.

## MEMORANDUM DECISION

WERKER, District Judge.

Plaintiffs have brought an action against defendants under the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 *et seq.*, Pub. L.No. 91–190, § 2 (Jan. 1, 1970) and the Housing and Community Development Act of 1974 (HCDA), 42 U.S.C. § 5301 *et seq.*, Pub.L.No. 93–383, § 101 (Aug. 22, 1974).

They seek a declaration that defendants, officials of the City of Kingston, New York, have violated NEPA, 42 U.S. C. § 4332(2)(C) [1] in that they failed to determine whether the Kingston Community Development Plan (KCDP) proposed in the Kingston application for federal assistance under HCDA significantly affects the quality of the human environment and have failed to prepare a detailed statement of the environmental impact of the proposed Plan.

They also seek a declaration that the KCDP fails to conform to the application requirements of sections 104(a)(1),[2] 104(a)(3),[3] and 104(b)(2)[4] of HCDA.

They have asked for a preliminary injunction enjoining the defendants from spending any part of the first year grant of $1,359,000 until they have complied with NEPA and HCDA.

Jurisdiction is said to be conferred under 28 U.S.C. § 1331, 28 U.S.C. § 1361 and 5 U.S.C. § 702.

The defendants have submitted a cross-motion for summary judgment on the ground that the complaint does not state a claim upon which relief can be granted. They assert that there is no triable issue of fact and that they are entitled to judgment as a matter of law.

The plaintiffs are community-based corporations, the officers thereof, and two residents of Roundout, a primarily low income neighborhood in the City of Kingston. Defendants are the Mayor, Corporation Counsel, members of the Common Council of the City of Kingston, and the director of the Kingston Community Development Agency.

Upon the return date of the Order to Show Cause, October 6, 1975, the plaintiffs through their attorney declined the opportunity to give any evidence with respect to the allegations in the moving affidavit or the complaint. It was their contention that the defendants were in violation as a matter of law and that a preliminary injunction should issue upon the papers and documents on file. Defendants, on the other hand, moved for summary judgment on the ground that no material issue of fact exists. In their answer they claim:

(1) The complaint fails to state a claim upon which relief can be granted;

(2) The court lacks jurisdiction of the action since no injunctive or declaratory relief is authorized under 28 U.S.C. § 1361;

(3) Plaintiffs have failed to exhaust their administrative remedies;

(4) The claims asserted by plaintiffs are premature; and

(5) The defendants' actions were in accordance with and authorized by HCDA, 42 U.S.C. § 5301 *et seq.*

The City of Kingston, which is located in Ulster County approximately 85 miles north of New York City, has a population of 25,544, according to the 1970 census 7.68% is non-white. The City's mean annual family income is $8,458 and 27.-

---

1. NEPA § 102(2)(c).

2. 42 U.S.C. § 5304(a)(1).

3. *Id.* § 5304(a)(3).

4. *Id.* § 5304(b)(2).

6% of the families in Kingston earn less than $6,000 per year. The highest concentration of low and moderate income families is found in the Roundout and Ronchockie neighborhoods of the City. During the past few years, these areas have received millions of dollars in federal funds under urban renewal and other federal aid programs. For example, a new City Hall was constructed at a cost of nearly one million dollars; a new firehouse was built, costing approximately $350,000; two housing projects, one of 131 units and the other of 121 units, were built for the benefit of senior citizens and low income persons; a Community Center was built, the facilities of which included meeting halls, dining areas, lockers, a gymnasium, a day care center, and recreation areas; in addition there have been projects which provided new roadways, sidewalks, lighting systems, and traffic control devices. During 1974, anticipating the passage of HCDA in August and the availability of additional federal funds, the defendants began to study the current needs of the City of Kingston and to formulate projects that would be most beneficial to the residents. In the fall of 1974, after the passage of the Act, the defendants began the necessary preliminary steps to prepare an application for federal financial assistance under HCDA.

Upon the documents annexed to the plaintiffs' and defendants' papers the court makes the following findings and conclusions which are to be deemed findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure.

On September 16, 1974 in the *Kingston Daily Freeman,* a paper of general distribution, the public was informed by the Mayor of an available grant in excess of five million dollars. On September 17 and again on October 10, 1974 the City Planner made an audiovisual presentation to the Kingston Environmental Commission and the aldermen and representatives of the Central Businessmen's Association and discussed with them HCDA and the services available. A summary of this meeting was published in the *Freeman* on October 11, 1974. The Mayor's annual message of January 1, 1975 also contained a section on the grant. This also was reported by the press and live over the radio from the Common Council Chambers. A release from I. William Green, Regional Administrator of HUD, was published in the Sunday *Freeman* of January 5, 1975. On January 12, 1975 a public release from the Mayor's office entitled "Community Development Council Waiting For Public Views" was published in the *Freeman.* The Mayor also designated appointees to serve on a Community Development Advisory Council and announced the times and dates of two public hearings. Each of the public hearings was attended by upwards of 150 persons. Full presentations were given through the use of an audiovisual slide program and subpart C of the Rules and Regulations of HUD was distributed to show the range of eligible activities under HCDA. A report of the meetings of January 16, 1975 and January 24, 1975 was also carried by the *Freeman.* It should be noted that almost all of the individual plaintiffs were present and spoke at one or the other of these meetings as evidenced by the transcripts.

The public input at these meetings was discussed in these articles. A *Freeman* article under date of January 31, 1975 listed the Advisory Council's priorities with respect to the program. On February 3, 1975 the Mayor announced his proposals for community development. These were also reported. All of these activities were also reported on the radio and T.V. in the area. On the evening of February 4, 1975 the Common Council met and as part of its regular agenda took up and passed a resolution authorizing the program application. This too was a public meeting covered by the media in the area. The authorization passed by 11–2. The *Freeman* published a report on February 5, 1975. The process of obtaining approval from vari-

ous state agencies including the State Clearinghouse, the New York State Department of Environmental Conservation and the United States Army ensued, culminating in a letter of March 21, 1975 stating that the A–95 review was complete and nothing precluded application for the grant. On March 26, 1975 the *Freeman* reported the approval. By letter of March 25, 1975 the application was filed with HUD. Receipt thereof was acknowledged on April 7, 1975. On May 8, 1975 HUD approved the application submitted for the first year entitlement of the block grant.

■ In their second and third causes of action, the plaintiffs have alleged that the defendants failed to comply fully with the citizen participation requirements of HCDA at § 104(a)(6)[5] and that the decisions made by the defendants regarding the KCDP violated the plaintiffs' rights because in making them the defendants relied on inaccurate, insufficient and misleading information.

The Rules and Regulations of HUD, 24 C.F.R. § 570.303(e)(2) (1975), provide in part:

"The Act provides that no part of this paragraph shall be construed to restrict the responsibility and authority of the applicant for the development of the application and the execution of its community development program. Accordingly, the citizen participation requirements of this paragraph do not include concurrence by any person or group involved in the citizen participation process in making final determinations concerning the findings and contents of the application. The sole responsibility and authority to make such final determinations rests exclusively with the applicant."

The documentation provided with respect to the defendants' efforts to comply with the Rules and Regulations of HUD are such that I find that they have complied with the requirements of HUD. Summary judgment with respect to the second and third causes of action is consequently granted.

■ The plaintiffs' first cause of action alleges several violations of § 104 of HCDA.[6] A reading of the full application of the defendant City of Kingston persuades the court that the City has set forth projects and objectives in its application and that its short-term and long-term objectives are such that they comport with the requirements of § 104(a)[7] of HCDA. I find upon examination that a comprehensive strategy or a three year community development plan has been set forth, that such plan is designed to eliminate slums, blight and deterioration and does not fail to give maximum feasible priority to activities which will benefit low or moderate income families.[8] It appears to me that the approval of the plan by HUD is *prima facie* an indication of the fact that defendant City has complied with these basic requirements. Plaintiffs. in neither their affidavits nor complaint have stated sufficient acts or supplied evidence sufficient to overcome this.

■■ The plaintiffs' assertion that renovation of the auditorium is an illegal use of the funds is premature. The application submitted by the City represents that the expenditures on the auditorium will convert it into a multipurpose community center. Section 105(a)(2) of HCDA[9] specifically authorizes the use of federal funds for the "reconstruction . . . of . . . neighborhood facilities." As yet, there are no architectural plans showing the use to which this building is to be put. However, a presumption of regularity[10] must certainly attach to the assertion by the

5. *Id.* § 5304(a)(6).

6. *Id.* § 5304.

7. *Id.* § 5304(a).

8. HCDA §§ 104(a)(1), (a)(3), (b)(2); 42 U.S.C. §§ 5304(a)(1), (a)(3), (b)(2).

9. 42 U.S.C. § 5305(a)(2).

10 *Cf. Ussi v. Folsom,* 254 F.2d 842 (2d Cir. 1958).

City that this building is to be converted for use as a community center, not merely as an auditorium.[11]

Further unless it can be shown that HUD has in some way abused its power in approving the application it seems to me that courts should not interfere with the exercise of administrative power.[12] Nowhere with respect to the first cause of action is it claimed that HUD has illegally approved this application. As has appropriately been pointed out the department of HUD had extensive historical experience with the City of Kingston with respect to all of the elements involved in this application through urban renewal plans which have been accomplished by the City.

The first cause of action is dismissed and summary judgment is granted with respect to it.

■■ The fourth cause of action is based upon plaintiffs' contention that the regulations of HUD which provide that an environmental impact study is not required with respect to an initial application is contrary to the purposes of NEPA. Under § 104(h)(1) of Title 1 of HCDA[13] the Secretary of Housing and Urban Development "in lieu of the environmental protection procedures otherwise applicable, may under regulations provide for the release of funds for particular projects to applicants who assume all of the responsibilities for environmental review."[14]

The rules and regulations, as amended July 16, 1975, reiterate verbatim the regulations of January 7, 1975 and contain the following statement: "The procedure eliminates the necessity for Federal environmental impact statements at the time of the initial application."[15] This is plain language, and in the opinion of this court the defendants have complied with the rule. It should be noted that the City with respect to the rehabilitation of the water mains published in the daily *Freeman* on August 11, 1975 a notice of no significant effect on the environment. In the schedules annexed to the application of this item is marked "assessment." The advertisement indicates that an Environmental Review Record was made and filed in the office of the Planning Director. The maps annexed to the defendants' moving papers indicate the location of the project at some distance from the other proposed items in the program. It should be noted that bids have been opened on the water main project and are presently awaiting award. The onset of the winter season will require, if defendants are enjoined, rebidding this job since the bids are good for only 60 days. The estimated increase in cost next spring will be 25% more thus reducing the funds available for other projects.

The cases cited by plaintiffs involving segmented highways are inapposite. This is not segmented environmental review. As a result I am convinced that the City is at liberty to proceed with this project as well as all of the items involved in the initial application. The

11. *Compare* HCDA § 105(a)(2) and 24 C.F.R. § 570.200(a)(2) *with* 24 C.F.R. § 570.201(a)(2).

12. *See, e. g., Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

13. 42 U.S.C. § 5304(h)(1).

14. The plaintiffs have suggested, even if the defendants have in fact complied with all of the regulations promulgated by HUD, that further implementation of the KCDP should still be enjoined on the ground that § 104(h) of HCDA, 42 U.S.C. § 5304(h), does not comport with the requirements of NEPA itself.

This is not a case like *Greene County Planning Board v. Federal Power Commission,* 455 F.2d 412 (2d Cir.), *cert. denied,* 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972), in which a federal agency has abdicated its responsibilities in the face of Congress' directions, as expressed in NEPA. Rather, Congress specifically authorized the Secretary of HUD to promulgate regulations to replace NEPA's environmental review requirements which would otherwise be applicable. The court, therefore, rejects this contention.

15. Housing and Urban Development Environmental Review Procedures for the Community Development Block Grant Program, 24 C.F.R. § 58.1(a)(2) (1975).

fourth cause of action is dismissed and summary judgment is granted.

It is regrettable that in a city of this historical and actual importance in the Hudson River Valley rival groups through their intransigence may cause grievous loss through delays caused by litigation of this type. At some time and place it may be perceived that what is good for any part of Kingston will benefit all of Kingston. I cannot find that plaintiffs who have been the beneficiaries of millions of dollars of renewal and rehabilitation will be irreparably damaged by the program as proposed which incidentally provides considerable expenditures in the Roundout areas.

The motion for a preliminary injunction is denied upon the ground that the equities having been balanced tip in favor of defendants and that plaintiffs will not be irreparably harmed. Furthermore, the defendants' motion for summary judgment is granted, there being no triable issues of fact and the defendants being entitled to judgment as a matter of law, and the complaint is ordered dismissed.

So ordered.