Herbert Earl BRANDON and Iva Marie Brandon, Plaintiffs-Appellants,

v.

Samuel R. PIERCE, Secretary of Housing and Urban Development, and the City of Stilwell, Oklahoma, Defendants-Appellees.

No. 82–2019.

United States Court of Appeals, Tenth Circuit.

Jan. 12, 1984.

---

Victor Law Ellis, Tulsa, Okl., for plaintiffs-appellants.

Maria A. Iizuka, Atty., Dept. of Justice, Washington, D.C. (Carol E. Dinkins, Asst. Atty. Gen., Washington, D.C., Gary L. Richardson, U.S. Atty., Mark F. Green, Asst. U.S. Atty., Muskogee, Okl., Robert L. Klarquist, Atty., Dept. of Justice, and Carolyn B. Lieberman, Asst. Gen. Counsel for Litigation, and Edward G. Weil, Atty., Dept. of Housing and Urban Development, Washington, D.C., of counsel, were also on the brief), for defendants-appellees, The Secretary of Housing and Urban Development.

Jack E. Rider, Stilwell, Okl., for defendant-appellee, City of Stilwell.

Before HOLLOWAY and LOGAN, Circuit Judges, and ARRAJ,* District Judge.

HOLLOWAY, Circuit Judge.

This controversy stems from an Urban Development Action Grant (UDAG) that would expand a city-owned sewage treatment facility onto property owned by Herbert and Iva Brandon. The Brandons brought suit in the district court, seeking injunctive and declaratory relief against the Secretary of Housing and Urban Development (HUD) and the City of Stilwell, Oklahoma. The Brandons alleged that HUD had violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, and the Housing and Community Development Act of 1974 ("HCDA"), as amended, 42 U.S.C. § 5301 et seq., by failing to prepare an Environmental Impact Statement (EIS) prior to approving the UDAG Grant for the City of Stilwell. The Brandons also alleged that HUD had unlawfully delegated NEPA review responsibilities to the City, and that the City had failed to comply with a variety of procedural requirements mandated by HUD and Council of Environmental Quality (CEQ) regulations. The district court denied relief, and the Brandons appealed. We affirm.

I

On June 5, 1979, the City of Stilwell submitted its application for a UDAG grant to the Area Office of HUD in Oklahoma City, Oklahoma, and to HUD's central office in Washington, D.C. The application requested $3,888,000 in UDAG funds to increase the capacity of city water treatment and waste water treatment plants and to install new distribution lines. The purpose of these improvements was to provide sufficient water treatment capacity to permit Hudson Foods, Inc., to construct and equip a feedmill, a chicken hatchery, and a broiler

---

* Honorable Alfred A. Arraj, United States District Judge of the District of Colorado, sitting by designation.

**558**

processing plant. Under the application, Hudson Foods, Inc. would spend $14,200,000 of its own funds to construct and equip the chicken processing facilities. It was estimated that the chicken processing plant would provide over 900 permanent jobs to residents of the Stilwell area.

The application stated that the existing sewage treatment plant would have to be expanded by two million gallons per day, and that to accommodate the expansion three additional acres would have to be acquired. The expected date for acquiring the land was November 30, 1979.

The application contained the City's certification that it had conducted an Environmental Assessment and determined that there was to be no significant impact on the environment, that the assessment had been cleared by the area planning agencies reviewing the proposal, and that the finding would be officially published and circulated in June 1979.

Prior to submitting the application, the Stilwell city council had held meetings on May 17 and May 21, 1979, pursuant to notices published in the *Stilwell Democrat Journal* on May 10 and May 17, 1979. The purpose of these meetings was to satisfy HUD Citizen Participation requirements and the City's Citizen Participation Plan.

On June 14, 1979, the City published its "Notice of Finding of No Significant Effect on the Environment" in the *Stilwell Democrat Journal,* and circulated the notice to private organizations and government agencies. The notice advised the public of the City's finding, and of the reasons why the finding was made. It stated that the Environmental Review Record, which included the City's Environmental Assessment prepared by the Max Holloway Engineering Co., was available for public inspection. It invited public comments, and stated that any comments received up to and including June 28, 1979, would be considered. The City advised HUD that no comments were received in response to the notice.

On June 28, 1979, the City published a "Notice of Request for Release of Funds" in the *Stilwell Democrat Journal,* stating that the City intended to request release of funds from HUD, and that HUD would accept objections until July 24, 1979. It again stated that the Environmental Review Record was available for examination by the public. The Area Office received no objections.

At the time the June 14 and 28, 1979, notices were published, the Brandons resided in California, but owned a 5.5 acre tract adjoining the city limits of Stilwell and located near the city-owned sewage treatment facility. The Brandons did not receive direct notice by mail of the contents of the June 14 and 28 notices. They were subscribers to the *Stilwell Democrat Journal.*

HUD granted preliminary approval of the City's proposal on August 31, 1979, and released funds for the grant on December 17, 1979. HUD did not receive or review a copy of the City's Environmental Assessment prior to approval of the grant, nor did it prepare its own independent EIS regarding the project.

The Brandons retired and returned to Stilwell to live in April 1980. On September 3, 1980, they received a letter from the city attorney, Jack Rider, notifying them that the City was involved in a project to enlarge its sewer capacity and that the project necessitated the acquisition of a portion of property belonging to them. Plaintiffs' Exhibit 10. After the Brandons rejected an offer to purchase three acres of their property, the City filed condemnation proceedings in the District Court of Adair County, Oklahoma. On an appeal taken by the Brandons from an adverse decision, the Court of Appeals of Oklahoma, on May 18, 1982, reversed and held that the taking was unconstitutional under state law because it was not for a public use. *City of Stilwell v. Brandon,* No. 56,852 (Okla.Ct.App. May 18, 1982), *cert. denied,* 53 Okla.B.J. 2054 (Okla. Aug. 27, 1982). The City, prevented from condemning the Brandons' property, has since acquired other property for the project.

In October 1980 the Brandons filed this action in the district court challenging HUD's approval and the City's implementation of the UDAG grant. On November 25, 1981, the district court denied a motion by the Brandons for a preliminary injunction. The parties agreed to submit the case on the merits on the pleadings, briefs, exhibits, depositions, and affidavits. On this record the district judge entered findings, conclusions, and a judgment on June 23, 1982, in favor of defendants. This court denied a stay pending appeal on November 1, 1982. The district court found that delegation of responsibility for preparing an EIS, or an Environmental Assessment, to the City was proper; that the City's Environmental Assessment, prepared for it by an engineering firm, and the City's procedures, including its notice of finding of no significant effect on the environment, satisfied the requirements of HUD and CEQ regulations; that HUD's approval of the City's grant application was not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; and that the City's determination not to prepare an EIS because the project was not a major federal action which significantly affected the quality of the human environment was reasonable.

On appeal, the Brandons contend that (1) HUD unlawfully delegated its NEPA responsibilities to the City of Stilwell and failed to carry out its residual duty of overseeing the City's procedures; (2) the City failed to comply with various procedural requirements; (3) the City's determination that no EIS was required is unreasonable; and (4) the City's Environmental Assessment was invalidated by a conflict of interest.

## II

■ The Government suggests that the appeal may be moot and that the Brandons may lack standing; that their pleadings indicated their sole concern was the condemnation of their property; that the Brandons have succeeded in preventing the condemnation; and that much of the work on the project has been completed.

We decline to accept the Government's position. The interest shown by the Brandons is sufficient for them to maintain the suit. At argument in November 1983 we were advised that bids were to be let the following week on the new sewer plant. The showing in our record is not sufficient for us to treat the case as moot and we will consider the merits of the case.

## III

The Brandons argue that HUD's environmental regulations, 24 C.F.R. § 58 (1979), are invalid because they fail to require HUD to conduct an independent review of an applicant's environmental review record prior to HUD's acceptance of the UDAG application and release of funds thereunder. They say this constitutes an unlawful delegation of duties under § 4332 of NEPA, which requires all federal agencies to perform their environmental review responsibilities under NEPA "to the fullest extent possible." We reject these contentions, and hold the regulations are valid.

The grant for the project in this case was made pursuant to Title I of the Housing and Community Development Act of 1974, as amended. The primary objective of Title I is "the development of viable urban communities, by providing decent housing and a suitable living environment and expanding economic opportunities, principally for persons of low and moderate income." 42 U.S.C. § 5301(c) (Supp. II 1978). To that end, the statute streamlines the application and approval processes for federal assistance, see id. §§ 5301(b)(3), 5301(d)(1), 5304(b), and shifts much of the responsibility from the federal government to local communities for the implementation of federally assisted projects. Conf.Rep. No. 1279, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 4449 et seq. Title I of the HCDA provides for several community development programs including the UDAG program.[1]

1. The UDAG program was not part of the 1974 HDCA but was added in the 1977 amendments.

Section 5304(h) of the HCDA specifically authorizes a procedure under which grant applicants assume environmental review responsibilities for compliance with NEPA:

> In order to assure that the policies of the National Environmental Policy Act of 1969 [42 U.S.C. 4321 *et seq.*] and other provisions of law which further the purposes of such Act (as specified in regulations issued by the Secretary) are most effectively implemented in connection with the expenditure of funds under this chapter, and to assure to the public undiminished protection of the environment, *the Secretary, in lieu of the environmental protection procedures otherwise applicable, may under regulations provide for the release of funds for particular projects to applicants who assume all of the responsibilities for environmental review, decisionmaking, and action pursuant to such Act,* and such other provisions of law as the regulations of the Secretary specify, that would apply to the Secretary were he to undertake such projects as Federal projects.

42 U.S.C. § 5304(h) (1976) (emphasis added). The statute further provides that the grant applicant shall submit a certification indicating that such responsibilities have been assumed, *id.* § 5304(h)(3)(D), and that the Secretary's acceptance of the certification "shall be deemed to satisfy his responsibilities under the National Environmental Policy Act." *Id.* § 5304(h)(2).

■ Thus, the statute makes clear that Congress intended to transfer NEPA responsibilities from the federal agency to the local grant applicant.[2] "To require HUD to make an independent environmental analysis, where the grant applicant has assumed that duty, would be duplicative, wasteful, and contrary to the [decentralization goals] as well as the explicit provisions of the act." *Colony Federal Savings & Loan Association v. Harris,* 482 F.Supp. 296, 303 (W.D.Pa. 1980); *see also National Center for Preservation Law v. Landrieu,* 496 F.Supp. 716, 731 (D.S.C.1980), *aff'd,* 635 F.2d 324 (4th Cir.1980) (per curiam); *Monarch Chemical Works v. Exon,* 466 F.Supp. 639, 646 (D.Neb.1979), *aff'd,* 604 F.2d 1083 (8th Cir. 1979); *Ulster County Community Action Committee v. Koenig,* 402 F.Supp. 986, 991 n. 4 (S.D.N.Y.1975). The actual review by HUD is limited to determining that the grant applicant has followed all the CEQ guidelines and the regulations in 24 C.F.R. Part 58 in conducting its environmental review. *National Center for Preservation Law v. Landrieu,* 496 F.Supp. at 731; *see* 42 U.S.C. § 5304(c)(3) (Supp. II 1978); 5 U.S.C. §§ 706(2)(A) and (C).

■ Measured by these standards, we conclude that HUD's environmental regulations, under which the City's application was approved, are a valid implementation of statutory authority and should be sustained. In reaching this conclusion, we recognize that the CEQ at one time took a contrary position and disapproved HUD's environmental review procedures for UDAG applicants.[3] *See* 46 Fed.Reg. 25121–

---

42 U.S.C. § 5318 (Supp. II 1978).

**2.** Congress reaffirmed and broadened HUD's delegation authority in the 1979 amendments to the HCDA. Specifically, clarifying language was added to § 5304(h) to ensure that grant applicants could assume not only NEPA responsibilities but other environmental responsibilities as well. The conference report explained the amendment as follows:

> The conferees are aware that there has been some confusion over whether the Secretary has the authority to·delegate such authority with regard to Acts other than the National Environmental Policy Act of 1969 (NEPA). Specifically, the conferees wish to make clear that delegation can also be made with regard to the National Historic Preser-

vation Act of 1966, Coastal Zone Management Act of 1972, Wild and Scenic Rivers Act, Flood Disaster Protection Act and Clean Air Act as well as other acts which further the purposes of the NEPA.

Conf.Rep. No. 706, 96th Cong., 1st Sess. 45, *reprinted in* 1979 U.S.Code Cong. & Ad.News 2402–04; *see also* H.Rep. No. 154, 96th Cong., 1st Sess. 7–8, *reprinted in* 1979 U.S.Code Cong. & Ad.News 2317, 2323.

**3.** The reasons for such initial disapproval are contained in a series of letters directed to the Secretary of HUD or members of his staff by the Chairman of the Council on Environmental Quality and legal counsel for the CEQ over the period June 13, 1979, to January 19, 1981. I R. 460–500. In this correspondence the CEQ took

22 (May 5, 1981). However, since that time the CEQ has changed its position and has approved HUD's regulations pertinent to this litigation. *See* 47 Fed.Reg. 9270 (Mar. 4, 1982). We also observe that the statute does not require that CEQ's approval be obtained, but only that it be consulted. 42 U.S.C. § 5304(h)(1) (1976). Here there is no contention that such consultation did not take place. Thus the delegation procedures followed were valid.

### IV

The Brandons further contend that HUD's approval of the grant was arbitrary and capricious because the City failed to comply with various procedural requirements. They vigorously assert that HUD has totally abdicated its residual duty of oversight review. The argument fails, however, because we find that there were no procedural defaults shown and thus any oversight deficiency is of no consequence.

█ The Brandons first argue that the Environmental Review Record required by HUD regulations and compiled by the City was inadequate in being "devoid of a single document addressing any 'physical environmental factor' of local concern." In thus arguing, however, the Brandons fail to specify any elements that are lacking from the requirements set forth in 24 C.F.R. § 58.11 (1979).[4] The district court thoroughly analyzed the record and the regulations in detail and found that all required items either were present in the record or were inapplicable to this project. We find no substance to the claimed deficiency.

█ The Brandons next argue that the City's public notice of the proposed project was inadequate because they received no

direct mail notice in California advising them that their land was to be taken, or directly affected, by the implementation of the industrial sewer phase of the UDAG project. They argue that under 24 C.F.R. §§ 58.16(b) and 58.17(b) and 40 C.F.R. § 1506.6(b)(3)(viii) (1979), they were entitled to such direct mail notice.

It is true that 24 C.F.R. §§ 58.16(b) and 58.17(b) (1979) together required that the notice of a finding of no significant effect on the environment "shall be sent to the local news media, individuals and groups known to be interested in the applicant's activities. . . ." We must agree that among individuals "known to be interested" would be those whose property would be condemned. *Colony Federal Savings & Loan Ass'n v. Harris,* 482 F.Supp. at 304. While our record is not clear that at the time of the notice it was positively known by the City that the Brandons' property would be condemned, that would seem likely, and we will assume that this was known. Still this claim of a defect in the notice is not fatal at this time.

This is so because the Brandons prevailed in the state condemnation suit, preventing condemnation of their land and apparently any condemnation for the project which was held not to be for a public use. *City of Stilwell v. Herbert Earl Brandon, et al., supra.* The Government suggests that since the Brandons won their fight against condemnation and the UDAG project is underway on other property, the Brandons may lack standing or their appeal may be moot. For reasons already given in Part II, *supra,* we cannot agree that the case as a whole is moot or standing is lacking in all respects. However, we do feel that the Brandons'

---

the position that § 104(h) of the HCDA does not apply in the same manner to the UDAG program as it does to Title I entitlement programs, and that HUD retained a residual duty under NEPA with respect to the UDAG program which does not exist with respect to the entitlement program. I R. 495. We observe, however, that § 104(h) fails to make any distinction between the UDAG program and other Title I programs, and, as court decisions have confirmed, *see Landrieu,* 496 F.Supp. at 731, HUD has the same limited role with respect to

environmental procedure under UDAG as it does under the entitlement program.

**4.** The district court followed the requirements of the 1980 regulations in 24 C.F.R. § 58.11 (1980). Because of timing of the steps involved, the 1979 regulations may be applicable. But since the 1980 regulations considered by the district court are stricter than those of 1979, there is no prejudice to the Brandons.

claim of a defect in notice grounded on failure to notify them as future condemnees cannot now be asserted by them. Since the Brandons prevented the condemnation, this defect in notice to condemnees is a moot point.

■ We feel that otherwise the City complied with HUD's regulations on notice. The notice of the finding of no significant effect on the environment was published in the *Stilwell Democrat Journal,* a newspaper of general circulation, and was also distributed to local media and to the appropriate governmental agencies. I R. 372–78. Although the Brandons resided in California at the time, the record shows that they subscribed to the *Stilwell Democrat Journal* in which notices were published. III R. 26.

The Brandons also support their direct mail notice argument by pointing to CEQ regulations in 40 C.F.R. § 1506.6(b)(3)(viii) (1979). This regulation provides that in case of an action with effects primarily of local concern, the notice "may include" direct mailing to owners and occupants of nearby or affected property. We feel that because of the permissive language of the regulation, no violation has been established in view of the notices which were given.

■ The Brandons further argue that HUD citizen participation requirements were not met because no public meeting was attended by any individual citizen or citizens' group and because the City was unable to produce a signed, filled-in plan. HUD's regulations, 24 C.F.R. §§ 570.455(c), 570.456(c)(11)(i) (1979), set forth the citizen participation requirement which must be fulfilled before the local application may be submitted. Essentially these regulations require that the applicant prepare and follow a written citizen participation plan, and that two public hearings on the application be held, at least one of which must discuss needs which may be addressed by the grant activities.

In this instance, although the City was unable to locate an executed copy of its citizen participation plan, Sherry Garrett, the former Executive Director of the Stilwell Housing Authority, states in her affidavit that a copy of the plan, with blanks filled in, was executed by the Mayor of Stilwell. I R. 302. The Garrett affidavit and attached exhibits demonstrate that the City substantially complied with the plan. Two public hearings were held, and both the grant and the local needs giving rise to the application were discussed. *See id.* at 301–03, 412–16. Although the hearings were not attended by members of the general public, they were adequately publicized and did fulfill HUD's procedural requirements. *See id.* at 301–03, 410–11.

■ Finally, the Brandons argue that the City did not comply with the HUD regulation promulgated in 24 C.F.R. § 58.25 (1980), which requires the preparation and dissemination of an EIS "when the environmental review process . . . indicates that a project may have a significant environmental effect and for the following types of projects." Subsection (c) lists water and sewer projects that meet certain threshold requirements. The district court did not specifically consider whether an EIS was required in light of this regulation.

Although the Brandons rely on 24 C.F.R. § 58.25(c) (1980), which became effective June 25, 1979, we believe that the predecessor regulation, 24 C.F.R. § 58.25(b) (1979), governs this case since the City's Environmental assessment and publication of its notice of no significant impact occurred before the effective date of the regulation cited. Regardless of which regulation is used, however, the agency's EIS obligation does not arise until certain threshold requirements are met. Under the older regulation, the threshold requirement was that the sewer facility would serve "undeveloped areas of 100 acres or more." The newer regulation replaces this with a more complicated formula based on the number of residential units or their equivalents.

The Brandons have not pointed to any evidence, and we have not found any, that would show whether the Stilwell project exceeded the threshold requirements under either regulation. Since the Brandons had the burden of showing the applicability of

these regulations to the project, this claim of procedural error must also fail.

## V

■ The Brandons argue that the negative determination in the Environmental Assessment of the grant City was clearly error and that the project for an industrial sewer is clearly a major federal action significantly affecting the quality of the human environment within the meaning of NEPA.

We have considered the Environmental Assessment and the trial court's findings on this issue which review the details of the project. The findings note that the project will involve acquisition of some three acres of land near Stilwell sewage plant No. 2 and the expansion of the plant's capacity by two million gallons per day and other construction. The grant application sought funds for this work to provide sufficient water treatment capacity to permit Hudson Foods to construct the new feedmill, hatchery, and broiler processing plant. The City's application stated it had made an Environmental Assessment, prepared by the Max Holloway engineering firm, and determined there was no significant impact on the environment. Published notice of this finding invited comments but none were received and no public hearing was held on the negative finding. HUD did not receive a copy or review the Environmental Assessment.

The court found that the determination not to require an EIS was reasonable and that the project was not a major federal action significantly affecting the quality of the human environment. We must agree and conclude that on the record made, there was no violation of NEPA or of the regulations.

The Brandons do point to several elements which, they argue, are significant but escaped the City's scrutiny. These include the potential impact of doubling the City's discharge of sewer wastewaters, and the impact of 900–950 new employees on Stilwell's school system, transportation facilities, and domestic sanitary sewer facilities. A careful review of the record, however, demonstrates that these factors will not have the significant environmental effects alleged. First, the whole purpose of expanding the industrial treatment facilities is to eliminate what would otherwise be the sole significant adverse impact of the broiler processing plant—the creation of a large amount of water pollution. Exhibit B to Cordish Affidavit at 23; I R. 307–08. Second, it is anticipated that, because of the high unemployment rate in Adair County, the bulk of these new jobs will be filled by persons already residing in Stilwell and the immediately surrounding area. Berger Deposition at 58. Thus, there will not be the sudden adverse impacts on local facilities envisioned by the Brandons. *See also id.* at 42 (no substantial impact on public school system); Exhibit B to Cordish Affidavit at 24 (no significant changes in transportation anticipated because facilities are located on major arterial roads capable of handling traffic); *id.* (domestic wastes from community are being upgraded to meet new standards).

In sum, we conclude that the determination not to prepare an EIS was reasonable on this record, in light of the mandatory requirements and high standards set by NEPA. *See Wyoming Outdoor Coordinating Council v. Butz,* 484 F.2d 1244, 1249 (10th Cir.1973).

## VI

■ Finally, the Brandons argue that the Environmental Assessment was invalid because the private engineering firm hired to prepare the assessment had an obvious conflict of interest. They assert that the engineering firm depended for its fee on HUD's favorable action on Stilwell's UDAG application and the subsequent construction of the project, and that the firm would be paid only for its engineering work on the project and not for its services in preparing the Environmental Assessment. Therefore, the Brandons argue, a negative finding by the engineering firm reasonably could have been anticipated.

The record shows that the Max Holloway Engineering Co. performed a substantial

amount of work involving the project pursuant to a contract with the City. I R. 301. This work included the preparation of the Environmental Assessment. It is true that the firm had not received compensation for their services on the Environmental Assessment, and such work was treated as part of the overall engineering services, Holloway Deposition at 12–14, which could arguably be said to have influenced their work. However, it was the City, not the engineering firm, which had the responsibility of making the negative finding on an EIS and this responsibility was carried out by the City. See 58 C.F.R. § 58.16(a) (1979); Affidavit of Cordish, I R. 36, Ex. C at 3. We agree with the view expressed in *Essex County Preservation Association v. Campbell,* 536 F.2d 956, 960 (1st Cir.1976), that when project consultants are used in the preparation of an EIS or, in our case, an Environmental Assessment, the agency making the ultimate determination should exercise considerable caution; that the agency clearly may not substitute a private firm's efforts and analysis for its own; and that such agency must bear responsibility for the ultimate work product to satisfy the statute. In the instant case, we feel the City substantially carried out its duties by making the ultimate decision and giving the required notice of that decision.

### VII

In sum, we conclude that the Brandons as plaintiffs-appellants have not demonstrated any reversible error in the rulings made by the district court and the judgment accordingly is

AFFIRMED.