Philip S. HEEREN, Plaintiff,

v.

CITY OF JAMESTOWN, KENTUCKY and United States Department of Housing and Urban Development, and Henry G. Cisneros, Secretary of Housing and Urban Development, Defendants.

No. C90–0160–BG(H).

United States District Court,
W.D. Kentucky,
Bowling Green Division.

Dec. 4, 1992.

Opinion on Motion to Reconsider
April 7, 1993.

Benjamin Cowgill, Jr., Landrum & Shouse, Lexington, KY, for plaintiff.

Michael F. Spalding, Asst. U.S. Atty., Louisville, KY, V. Thomas Fryman, John A. Bender and David A. Owen, Greenebaum, Doll & MacDonald, Lexington, KY, for defendants.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This case comes before the Court on Plaintiff's Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. Plaintiff contends that he is entitled to attorneys' fees from Defendant Department of Housing and Urban Development ("HUD") because (1) HUD was not "substantially justified" in asserting that it delegated all of its environmental protection responsibilities to the City of Jamestown, Kentucky ("Jamestown"), and (2) Plaintiff did "prevail" against HUD in the underlying litigation.

The decision of Jamestown to build the "Lake Cumberland Pipeline" wastewater treatment system sparked the lawsuit which is now the subject of this Application. Jamestown won federal funding for the project on the strength of an environmental assessment which suggested that the project threatened no significant impact to existing ecology. HUD delegated its environmental protection responsibilities to Jamestown pursuant to 42 U.S.C. § 5304(g) when HUD approved the city's grant application.

Plaintiff later brought this action, insisting that Jamestown's original assessment failed to comply with applicable federal regulations. This Court entered a preliminary injunction in December, 1990, ordering Jamestown to prepare a revised environmental assessment and requiring HUD to suspend its funding allocations to the project until the assessment could be concluded. Plaintiff eventually contended that this revised assessment, too, was flawed. Jamestown finally settled the litigation by agreeing, among other things, to conduct a thorough analysis of project alternatives.

Throughout the litigation, HUD maintained the posture of a disinterested observer, ready to comply with this Court's rulings but taking no position on the merits of Plaintiff's and Jamestown's arguments. Plaintiff, having obtained the relief it sought through its litigation, then applied for reimbursement of its attorney fees from HUD.

I.

The Equal Access to Justice Act ("EAJA") provides for attorney fees to the "prevailing party" in litigation against the United States "unless the court finds that the position of the United States was 'substantially justified....'" 28 U.S.C. § 2412(d)(1)(A). Congress designed EAJA "to encourage private parties, who might be deterred by the expense of litigation, to challenge unreasonable government behavior." *Trident Marine Constr. v. District Eng'r,* 766 F.2d 974, 978 (6th Cir.1985). That policy is balanced by the Act's insistence that the United States' position lack "substantial justification", which assures that the Act's mandates will not "inhibit the government's efforts to enforce the law nor burden the government with the cost of an automatic fee-shifting provision." *Id.* at 978–79.

The United States' position is "substantially justified" if it is "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). The decisions of other courts which have examined the arguments advanced by the United States provide guidance in evaluating the reasonableness of the United States' position. *Id.* at 568–69, 108 S.Ct. at 2551–52. The United States bears the burden of demonstrating that its approach was substantially justified. *Kali v. Bowen,* 854 F.2d 329, 332 (9th Cir.1988).

The United States contends that the Secretary of Housing and Urban Development properly delegated that Department's environmental review responsibilities to Jamestown pursuant to 42 U.S.C. § 5304(g)(1). Indeed, suggests the United States, the Department held a status analogous to that of a disinterested stakeholder in an interpleader action, standing apart from the litigation while the adverse parties fought over the purse held by the federal agency. (Resp. to Pl.'s Application for Award of Att'ys Fees at 5.) The United States maintained this "delegation" argument throughout the underlying litigation. If this position is substantially justified, Plaintiff's request for attorney fees must fail.

■ Analysis of HUD's delegation power and the policy behind it supports HUD's position throughout the lawsuit and with respect to this motion. The source of HUD's power of delegation can be found in the Housing and Community Development Act, 42 U.S.C. § 5301 *et seq.* That Act permits the Secretary of HUD to release funds to grantees "who assume all of the responsibilities for environmental review, decision making, and action" imposed by the National Environmental Policy Act ("NEPA"). 42 U.S.C. § 5304(g)(1). The recipient desiring Community Development assistance must certify that it has satisfied NEPA's mandates. The Secretary's approval of this certification "shall be deemed to satisfy [the Secretary's] responsibilities" under NEPA. § 5304(g)(2). HUD then completely detaches itself from disputes focusing on the grantee's compliance with NEPA, warning in its regulations that "[p]ersons and agencies seeking redress in relation to environmental reviews ... shall deal with the recipient and not with HUD." 24 C.F.R. § 58.77(b).

The Housing and Community Development Act thus "shifts much of the responsibility from the federal government to local communities for the implementation of federally as-sisted projects." *Brandon v. Pierce,* 725 F.2d 555, 559 (10th Cir.1984). The courts would frustrate that intent if they required HUD "to make an independent environmental analysis, where the grant applicant has assumed that duty...." *Id.* at 560. Insistence on continued HUD responsibility "would be duplicative, wasteful, and contrary to the [decentralization goals] as well as the explicit provisions of the act." *Id.* (brackets in original). HUD therefore fulfills its duties by assuring that the grant recipient has complied with NEPA's procedural requirements and HUD's regulations. *Id.; see also Cornell Village Tower Condominium v. Department of Hous. & Urban Dev.,* 750 F.Supp. 909, 925 (N.D.Ill.1990).

Plaintiff does not contend that HUD improperly delegated its NEPA responsibilities to Jamestown, nor can Plaintiff identify any case law suggesting that HUD stands liable as guarantor for Jamestown's substantive violations.[1] The United States' position finds support in both the delegation statute's plain language and in court decisions interpreting the law's policy and application. This Court could not require HUD to bear the consequences of its delegate's failures and still remain loyal to the words and intent of the Housing and Community Development Act. The position of the United States therefore was "substantially justified"; Plaintiff cannot claim attorney fees under § 2412(d)(1)(A) of the Equal Access to Justice Act.

## II.

This Court does retain the discretion to award attorney fees to the "prevailing party" in a dispute against the United States, even if the United States' litigating position was reasonable. 28 U.S.C. § 2412(b). However, Plaintiff cannot qualify as a "prevailing party" as against HUD.

■ Under the two-part standard applied by the Sixth Circuit, a party has "pre-

---

1. Plaintiff cites several cases that refuse to allow HUD to "accept[ ] without question the self-serving statements or assumptions of local agencies in connection with the preparation of EIS's [Environmental Impact Statements]." *Trinity Episcopal School v. Romney,* 523 F.2d 88, 94 (2nd Cir.1975). Each of these cases, however, ad-dressed HUD's responsibility under circumstances in which it had not delegated its NEPA obligations, but instead was responsible for environmental safety compliance itself. *See also Sierra Club v. Lynn,* 502 F.2d 43, 59 (5th Cir.1974) *and Greene County Planning Bd. v. Federal Power Comm'n,* 455 F.2d 412, 420 (2nd Cir.1972).

vailed" if it shows: (1) that its lawsuit was a necessary and important factor in achieving the relief desired, and (2) that the relief resulted, not from "a gratuitous act on the defendant's part", but because the defendant's actions were mandated by law. *Citizens Coalition for Block Grant Compliance v. City of Euclid,* 717 F.2d 964, 966 (6th Cir.1983). A party may "prevail" by obtaining a favorable settlement, if the lawsuit acted as a catalyst in prompting the defendant to take the desired action. *Id.*

■ There can be little doubt that Plaintiff "prevailed" against Jamestown in this action: the lawsuit fully achieved Plaintiff's objective of forcing Jamestown to conduct a more exhaustive environmental study, and Jamestown agreed in its settlement to undertake actions which the law clearly required. But the question before this Court is not whether Plaintiff prevailed in the abstract, but whether Plaintiff specifically prevailed as against HUD, the only party named in Plaintiff's Application for attorney fees. The United States, again citing the Secretary's power to delegate its NEPA obligations to Jamestown, insists that HUD cannot be characterized as a "losing party" in the dispute between Plaintiff and Jamestown.

The Sixth Circuit has not expressly declared that a plaintiff must prevail *against* a particular federal agency to be entitled to attorney fees *from* that agency. But there can be little doubt that, under traditional fee-shifting principles, the fact that "a plaintiff has prevailed against one party does not entitle him to fees from another party, let alone from a nonparty." *Kentucky v. Graham,* 473 U.S. 159, 168, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). Indeed, as the Supreme Court has announced, "the logical place to look for recovery of fees is to the losing party—the party legally responsible for relief on the merits." *Id.* at 164, 105 S.Ct. at 3104.

The party "legally responsible for relief on the merits" in the case before this Court was Jamestown, not HUD. It was Jamestown, not HUD, which was "prompt[ed] ... to take the desired action" by Plaintiff's suit. *Euclid,* 717 F.2d at 966. As the Ninth Circuit

noted recently in an action presenting similar facts, a plaintiff cannot claim attorney fees merely because the plaintiff's suit "prompt[ed] an opposing party to take action." *Idaho Conservation League v. Russell,* 946 F.2d 717, 721 (9th Cir.1991). The plaintiff must establish that the *particular party* from whom the plaintiff now demands reimbursement was "prompted into action." *Id.* (holding that plaintiffs there had not "prevailed" against the EPA where "nothing ... indicated that the litigation caused the EPA to do anything to further or facilitate settlement," *id.* at 721–22). The same is true here.

Under such circumstances, Plaintiff cannot contend that he has "prevailed" as against HUD, and thus cannot claim entitlement to a discretionary grant of attorney fees under 28 U.S.C. § 2412(b).

### III.

This Court's careful analysis in Parts I and II of this Memorandum Opinion leads inexorably to the conclusion that HUD, having properly delegated its NEPA obligations to Jamestown, also insulated itself from liability for attorney fees under the Equal Access to Justice Act. Were our analysis to end here, HUD's effective exercise of its delegation power under one law—NEPA—would leave Plaintiff without a remedy under another law—EAJA.

Such a result would indeed be illogical and unfair. Allowing the Secretary to transfer HUD's *powers* under NEPA without also passing the *obligations* which limit those powers would enable the Secretary, by the stroke of a pen, to deprive American citizens of the protections specifically provided for in the Equal Access to Justice Act. It should not be casually assumed that Congress intended such a result. In fact, close analysis reveals that the law compels quite a different result: one fairer and more logical, and more consistent with the plain language of the statutes.

■ NEPA vests the Secretary of HUD with the authority to delegate HUD's environmental responsibilities for the purpose of "assur[ing] that the policies of the National

Environmental Policy Act of 1969 and other provisions of law which further the purposes of such Act ... are most effectively implemented...." 42 U.S.C. § 5304(g)(1). Toward that end, a non-federal entity desiring Community Development funds must specify that its "certifying officer ... consents to assume the status of a responsible Federal official under the National Environmental Policy Act...." § 5304(g)(3)(D)(i). That officer also "consents on behalf of the recipient ... and himself to accept the jurisdiction of the Federal courts for the purpose of enforcement of his responsibilities as such [a Federal] official." § 5304(g)(3)(D)(ii). In this manner the law assures that the grant recipient will "assume all of the responsibilities for environmental review ... that would apply to the Secretary were [the Secretary] to undertake such projects as Federal projects." § 5304(g)(1).

Thus, at least for the purpose of compliance with NEPA regulations, Jamestown's certifying officer became a "Federal official", under § 5304(g)(3)(D)(i), clothed with the same powers and obligations that would attend the Secretary were that person to carry out the federal project. One such obligation or responsibility imposed upon the Secretary when acting in an official capacity is the Secretary's liability under the Equal Access to Justice Act to a party who successfully challenges the Secretary's noncompliance with NEPA. It stands to reason that EAJA would subject Jamestown's certifying officer to the same liability. Indeed, EAJA's plain language accomplishes just that result.

The Equal Access to Justice Act imposes liability for attorney fees upon the United States whenever a party prevails in a dispute against, among other entities, "any official of the United States acting in his or her official capacity...." 28 U.S.C. § 2412(b) and (d)(2)(C). Jamestown's certifying officer became a "responsible Federal official" for purposes of NEPA compliance under 42 U.S.C. § 5304(g)(3)(D). This "Federal official" created by the delegation would then qualify as "an official of the United States" under the Equal Access to Justice Act. The Secretary's delegation authority thus does not insulate the United States from EAJA attor-

ney fees liability: the delegation merely shifts EAJA's focus from HUD to the grantee, just as the delegation shifts many of the Secretary's other powers and obligations to the grantee.

The United States concedes, and it can hardly be disputed, that Plaintiff "prevailed" against Jamestown in the underlying litigation. (Resp. to Pl.'s Application for Award of Att'ys Fees at 2.) Neither party, however, has discussed whether Jamestown's litigation position was "substantially justified", and obviously Jamestown itself has not yet been asked to defend the legal arguments it presented in the underlying litigation. And even if Plaintiff can establish an entitlement to attorney fees, it remains unclear whether the source of payment for those fees should be provided by the delegate, Jamestown, or by its principal, the United States.

The Court shall therefore grant Plaintiff leave to amend its Application and to address the issue of whether Jamestown was "substantially justified" in its litigation position and, if Jamestown was not "substantially justified," which entity shall be responsible for Plaintiff's attorneys' fees.

## MEMORANDUM OPINION ON MOTION TO RECONSIDER

This case is before the Court on motions to reconsider by each party. The previous Opinion delivered by this Court held that Plaintiff could not collect attorney fees in this action under the Equal Access to Justice Act from Defendant Department of Housing and Urban Development ("HUD"), but might gain reimbursement under the same statute from another Defendant, the City of Jamestown. Both parties now ask the Court to revise this interpretation of the law.

Plaintiff's dispute with Jamestown and HUD focused on the deficiencies of Jamestown's first environmental assessment and Jamestown's consequent finding that the planned project threatened no significant impact to the environment. (Pl.'s Reply Mem. in Support of Att'y Fees at 8–11.) The litigation yielded a settlement in which Jamestown agreed to perform a more intensive environmental analysis and to include Plaintiff on the Technical Advisory Committee oversee-

ing the new study. (Pl.'s Mem. in Support of Att'y Fees at 2–3.) Plaintiff then sought reimbursement of its attorney fees from HUD under the Equal Access to Justice Act ("EAJA"). 28 U.S.C. §§ 2412(b), (d). The United States contended, and this Court agreed, that HUD had properly delegated its responsibilities under the National Environmental Policy Act ("NEPA") to Jamestown pursuant to 42 U.S.C. § 5304(g). This Court concluded that HUD's exercise of its delegation power precluded the possibility that Plaintiff could "prevail" against HUD, and that Plaintiff therefore could not obtain EAJA reimbursement from HUD. (Ct.'s Mem.Op. of Dec. 8, 1992 at 6.)

That Memorandum Opinion proceeded, however, to hold that Plaintiff might properly collect EAJA fees from Jamestown. No dispute attended the fact that Plaintiff had indeed "prevailed" against Jamestown in the underlying litigation. This Court observed that Jamestown became a "responsible Federal official" by force of law when HUD delegated its NEPA obligations. 42 U.S.C. § 5304(g)(3)(D). The Court concluded that Jamestown's violations of NEPA could be considered the transgressions of an "official of the United States acting in [its] official capacity", and might therefore expose Jamestown to liability for attorney fees under the Equal Access to Justice Act. 28 U.S.C. §§ 2412(b), (d)(2)(C).

Both parties now ask this Court to revise its interpretation of the law. Each makes thoughtful and in some respects persuasive arguments concerning the interplay of statutes and regulations for which there exists no precedent and little judicial guidance. The Court has thoroughly reviewed these arguments. While complimenting counsel on their efforts, the Court is convinced that its own formulation best preserves the true meaning and policy intended by the statutes and regulations and provides the most reasonable analysis for this and future cases.

## I.

Plaintiff asks the Court to rescind its determination that Plaintiff did not "prevail" against HUD as that term is understood by the Equal Access to Justice Act. Plaintiff contends that HUD's delegation powers cannot insulate HUD from EAJA liability if HUD's delegate violates federal environmental protection laws. Plaintiff specifically maintains that his claims against HUD and Jamestown were "based on their joint failure, as principal and agent, to satisfy HUD's environmental review obligations under NEPA." (Pl.'s Mot. for Recons. at 7.) Plaintiff concludes that his success against Jamestown should qualify as "prevailing" against HUD for the purpose of collecting attorney fees from HUD under the Equal Access to Justice Act. (Id. at 7–8.)

A close review of the cases discussing HUD's post-delegation liability has failed to identify a basis upon which HUD could be held responsible for the particular failures perpetrated by Jamestown and resolved by this litigation. Those opinions unanimously hold that "HUD is not obligated to review [a delegate's] environmental assessment on the merits but rather must accept this finding as long as it is assured that the recipient has complied with NEPA's *procedural* requirements and HUD's regulations." *Cornell Village Tower Condo. v. Department of Hous. and Urban Dev.*, 750 F.Supp. 909, 925 (N.D.Ill.1990) (emphasis added). *See also Brandon v. Pierce*, 725 F.2d 555, 560 (10th Cir.1984); *Dickeyville Assoc. v. United States Dept. of Hous. and Urban Dev.*, 636 F.Supp. 362, 366 (D.Md.1986); *Crosby v. Young*, 512 F.Supp. 1363, 1383 (E.D.Mich. 1981); *and Colony Fed. Sav. & Loan*, 482 F.Supp. 296, 303 (W.D.Pa.1980).[1]

The opinion in *Raleigh Heights Homeowners Protective Assoc. v. City of Reno*, 501 F.Supp. 269 (D.Nev.1980), upon which Plaintiff relies, does not conflict with the holdings cited above. It is true that the *Raleigh* court asserted broadly that HUD retains a duty after delegation "to insure that [develop-

---

1. Procedural omissions which might impose liability on HUD have been described to include a delegate's failure to provide adequate notice of its environmental assessment finding, *see Cornell Village*, 750 F.Supp. at 926–27 *and Colony Fed.*,

482 F.Supp. at 304, and a delegate's refusal to prepare an environmental impact statement despite a finding of significant impact threatened by a project, *see Dickeyville*, 636 F.Supp. at 367.

ment] funds will be used in conformance with the guidelines established by NEPA." *Id.* at 273. But the opinion's next sentence clarifies that comment by specifying that "HUD has an obligation to see that *procedural* requirements are met and applicable federal regulations followed." *Id.* (emphasis added), citing *Colony Fed., see supra.* The grantee in *Raleigh* had published a notice reporting a finding of: "no significant impact" as a prerequisite to obtaining federal funds, but had analyzed the environment of a location entirely different than the one for which the federal funds were ultimately used. *Id.* at 272. The *Raleigh* court properly held that HUD might be liable in its own right for violation of NEPA where its delegate had failed to provide proper notice of its planned project. *Id.* at 272–73; *see also Colony Fed.,* 482 F.Supp. at 304 (describing notice requirement as a procedural obligation).

Plaintiff in this litigation complained not of a procedural flaw, but a substantive error, arguing that Jamestown's environmental assessment had been insufficiently thorough and that the city's finding of no significant impact was therefore improper. It is well settled that "neither HUD nor its Secretary [have] a legal obligation under NEPA to prepare a separate environmental impact statement [or] . . . critically evaluate the *substance* of the environmental analysis prepared by the [delegate]. . . ." *Colony Fed.,* 482 F.Supp. at 304 (emphasis in original). A disagreement over the substance of a delegate's environmental assessment findings, including the delegate's decision not to prepare a more-detailed environmental impact statement, cannot impose liability upon HUD. *Cornell Village,* 750 F.Supp. at 925. A fellow district judge in the Sixth Circuit provided some helpful guidance regarding the distinction between NEPA substance and procedure when it analyzed an argument similar to that advanced by Plaintiff in this action:

> [I]t could be argued that the failure to include all reasonable alternatives in the EIS [environmental impact statement] constituted a procedural violation of NEPA, thus subjecting the Secretary of HUD to liability because of his continuing responsibilities to enforce NEPA procedures. I believe that this claim would fail,

however. . . . [Section] 5304(h)(3)(D) requires the fund recipient to assume all responsibility for "environmental review" under § 5304(h)(1) [now § 5304(g) ]. This would appear to indicate that, although the Secretary of HUD retains responsibility for the procedural requirements, questions as to the *adequacy* of the procedures are beyond his duty, and are more properly [ ] within the domain of the fund recipient.

*Crosby,* 512 F.Supp. at 1383, n. 3 (emphasis in original). Plaintiff similarly attacked the sufficiency of Jamestown's environmental assessment, and successfully forced the city to enlarge the scope of its study:

> [O]ne of the most crucial differences between an EA [environmental assessment] and EIS is that an EIS must include a thorough analysis of alternatives to the project as proposed. This analysis of alternatives is precisely what the Plaintiff sought to force upon the Defendants in this action.

(Pl.'s Mem. in Support of Att'y Fees at 3 (emphasis omitted).)

Indeed, Plaintiff successfully challenged the merits of Jamestown's environmental assessment. Plaintiff established that Jamestown's finding of no significant impact was incorrect. However, Plaintiff did not prove that Jamestown had violated NEPA *procedure:* the city had conducted an environmental assessment, had made a determination that its project posed no significant danger, had given proper notice of this fact, and had declined to prepare a more-detailed environmental impact statement, as was its prerogative. Plaintiff identified flaws only in the *substance* of Jamestown's findings, and remedied these deficiencies through his settlement with Jamestown. HUD was in no sense vicariously liable for Jamestown's substantive omissions.

If HUD cannot be held liable to Plaintiff either vicariously or in its own right, the Court cannot conceive how Plaintiff could be said to have "prevailed" against HUD for the purpose of collecting attorney fees from HUD under §§ 2412(b) or (d) of the Equal Access to Justice Act. Nor is the Court willing to adopt a theory under which Plain-

tiff may collect attorney fees from one federal agency, HUD, by prevailing against a different "federal official", in this instance Jamestown.

## II.

The United States objects to this Court's observation that Jamestown itself could be held liable under the Equal Access to Justice Act. Jamestown acquired the status of a "responsible Federal official" by virtue of HUD's delegation of NEPA obligations under 42 U.S.C. § 5304(g)(3)(D); the Court reasoned that Jamestown stood in the shoes of an "official of the United States", as that term is understood by the Equal Access to Justice Act, with respect to Jamestown's compliance with the dictates of federal environmental law. 28 U.S.C. §§ 2412(b), (d)(2)(C); *see also* Ct.'s Mem.Op. of Dec. 8, 1992 at 6–8. Plaintiff, by establishing that Jamestown had failed to carry out its NEPA obligations, established that a "responsible Federal official" had violated the law; by so doing, Plaintiff "prevailed" against an "official of the United States" for the purpose of collecting attorney fees from Jamestown under the EAJA.

The United States contends that Jamestown's status as a "Federal official" under NEPA serves as little more than a bookkeeping device, and extends no farther than NEPA itself. The delegate's consent to assume federal official status "is *only for the purposes of certifying compliance* with the requirements of NEPA", the United States asserts; the delegate's certification "is not intended to make the certifying official a 'responsible Federal official' for all purposes." (Def.'s Mot. for Recons. at 4 (emphasis in original).) The United States suggests that Jamestown was little more than an independent contractor, and contends that an independent contractor for the government does not become part of the government itself, nor pass its own liability to its federal employer. *See United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976) *and Logue v. United States*, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973).

The Court agrees that Jamestown could not properly be considered a federal official for *all* purposes under the EAJA, and the Court never intended to suggest such broad federal liability. But the plain language of the delegation statute confers upon Jamestown the status of a federal official with respect to NEPA compliance, and commands Jamestown to submit to the federal courts' jurisdiction "for the purpose of enforcement of [its] responsibilities as such an official." 42 U.S.C. § 5304(g)(3)(D). Jamestown's violations of NEPA therefore are violations committed by a "responsible Federal official"; to hold otherwise would require the Court to ignore the plain import of the law.

If Jamestown is found responsible as a "Federal official" for NEPA violations, it seems consistent and logical to proceed to consider Jamestown an "official of the United States acting in [its] official capacity" when evaluating the city's potential liability for attorney fees under the Equal Access to Justice Act. Jamestown's attorney fees liability could extend no farther than the scope of its responsibility under NEPA, of course; violations of law other than NEPA by Jamestown could not expose the city to EAJA liability, since those violations would not have been committed by a federal official acting in its official capacity. Under the circumstances presented by this case, however, Plaintiff did prevail against Jamestown on the basis of Jamestown's failure to comply with NEPA; as such, Jamestown properly became eligible to bear the same EAJA attorney fee liability as any government official would face upon proof of a similar NEPA violation.

The Supreme Court opinions in *Orleans* and *Logue* do not compel a different result. Both cases discussed liability under the Federal Tort Claims Act, which expressly prohibits the imposition of liability upon the United States for the wrongful acts of the government's independent contractors. 28 U.S.C. §§ 1346(b) and 2671. The Supreme Court in both cases assigned particular significance to this statutory exclusion of liability. *Logue*, 412 U.S. at 528, 93 S.Ct. at 2220; *Orleans*, 425 U.S. at 813–814, 96 S.Ct. at 1975–76. The Court also warned that imposing liability upon the federal government for the acts at issue in those cases would vastly and unduly expand the United States' tort

liability. *Logue,* 412 U.S. at 531–32, 93 S.Ct. at 2221–22; *Orleans,* 425 U.S. at 815–16, 96 S.Ct. at 1976–77.

The lawsuit before this Court presents none of the elements which troubled the Supreme Court in *Logue* and *Orleans.* Whereas the Supreme Court in those cases interpreted a statute which *excluded* parties from consideration as government officials, the delegation statute at issue in this litigation *confers* the status of responsible federal official upon an otherwise non-federal actor. Whereas the Supreme Court in *Logue* and *Orleans* rightly feared the unintended *expansion* of federal liability, the decision of this Court merely *preserves* liability which the Congress had carefully and intentionally imposed, through NEPA and the EAJA, on all federal officials. Though the United States' arguments hold considerable merit, this Court continues to believe that Jamestown, liable as a federal official for its NEPA violations, might also be liable for EAJA attorney fees under the proper circumstances.

### III.

█ Plaintiff unfortunately cannot press its potential right to EAJA attorney fees from Jamestown. Plaintiff's settlement with Jamestown included a provision in which Plaintiff agreed not to pursue Jamestown for the payment of attorney fees. (Def.'s Mot. to Amend at 2.) Plaintiff does not suggest, nor can the Court discern, any reason why the settlement agreement should not be enforced. Plaintiff's Application shall therefore be dismissed.

### ORDER

This matter is before the Court for determination of the parties' Motions to Reconsider this Court's prior ruling. The Court having considered this matter, having set forth its findings in a Memorandum Opinion, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the parties' Motions to Reconsider shall be **DE-NIED;** and

IT IS FURTHER ORDERED that Plaintiff's Application for payment of attorney fees pursuant to the Equal Access to Justice Act,

28 U.S.C. § 2412, shall be **DISMISSED.** This is a final Order for which there is no just cause for delay.